EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Ángel Pérez Ríos; Lisa N. Spickers Sepúlveda; Nelson Hernández Pérez<br><br>Recurridos<br><br>v.<br><br>Luma Energy, LLC<br><br>Recurrida<br><br>Colegio de Peritos Electricistas<br><br>Peticionario | Certiorari<br><br>2023 TSPR 136<br><br>213 DPR ___ |

Número del Caso: CC-2022-0676

Fecha: 16 de noviembre de 2023

Tribunal de Apelaciones:

    Panel VIII

Abogados de la parte peticionaria:

    Lcdo. Luis Raúl Albaladejo
    Lcda. Veronica Ferraiuoli Hornedo

Abogado de la parte recurrida (demandantes):

    Lcdo. Armando del Valle Muñoz

Abogados de la parte recurrida (demandada):

    Lcda. Ana Margarita Rodríguez Rivera
    Lcdo. Daniel Brown Sáenz

Materia: Procedimiento Civil - El Colegio de Peritos Electricistas de Puerto Rico es una parte indispensable en un pleito en el cual se ordenó a LUMA Energy, LLC a que desistiera de exigir que los peritos electricistas no colegiados compraran y cancelaran los sellos vendidos por el Colegio como condición para la emisión de sus certificaciones eléctricas.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Ángel Pérez Ríos; Lisa N. Spickers Sepúlveda; Nelson Hernández Pérez

     Recurridos

       v.

                         CC-2022-0676

Luma Energy, LLC

     Recurrida

Colegio de Peritos Electricistas

     Peticionario

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 16 de noviembre de 2023.

En esta ocasión, nos corresponde determinar si el Colegio de Peritos Electricistas de Puerto Rico (Colegio) es una parte indispensable en un pleito en el cual se ordenó a LUMA Energy, LLC (LUMA) a que desistiera de exigir que los peritos electricistas no colegiados compraran y cancelaran los sellos vendidos por el Colegio como condición para la emisión de sus certificaciones eléctricas.

Tras un análisis ponderado del expediente del recurso ante nos y de las normas legales aplicables, concluimos que en este caso el Colegio es una parte indispensable. Ello, se debe a que un porcentaje de los ingresos recibidos como resultado de la venta de los referidos sellos está designado por ley para el

funcionamiento del Colegio. Es decir, el resultado del pleito incide directamente en un derecho propietario del Colegio. Por esta razón, es una parte que tiene un interés común sin cuya presencia no puede adjudicarse la controversia.

Veamos los hechos que dieron lugar a esta controversia.

I

La controversia ante nos surge luego de que recayeran dos sentencias del Tribunal de Primera Instancia relacionadas con el esquema regulatorio de la profesión de los peritos electricistas y, en particular, el requisito de colegiación compulsoria. En primer lugar, el 15 de agosto de 2019 un grupo de peritos electricistas presentó una demanda de sentencia declaratoria en el caso Luis Ángel Pérez Ríos y otros v. Colegio de Peritos Electricistas y otros, Civil Núm. SJ2019CV08293, para impugnar la constitucionalidad de la Ley Núm. 131 de 29 de junio de 1969, 20 LPRA sec. 2011 et seq., en lo referente a la validez del requisito de la colegiación obligatoria de los peritos electricistas en Puerto Rico. El 22 de enero de 2020 el Tribunal de Primera Instancia dictó una sentencia mediante la cual decretó la inconstitucionalidad del requisito de colegiación obligatoria para ejercer tal oficio.[1]

En segundo lugar, el 5 de abril de 2021 se presentó una petición de interdicto permanente en el caso Luis Ángel Pérez Ríos y otros v. Autoridad de Energía Eléctrica, Civil

---

[1] El Colegio no apeló el fallo judicial, por lo que la Sentencia emitida advino final y firme.

Núm. SJ2021CV0281, solicitando dejar sin efecto ciertas disposiciones incluidas en el Reglamento Núm. 7817, "Reglamento para la Certificación de Instalaciones Eléctricas" de 25 de febrero de 2010(Reglamento 7817). En específico, se sostuvo que este reglamento imponía como condición para la certificación de instalaciones eléctricas que los peritos electricistas estuviesen colegiados. El 2 de junio de 2021 el foro primario expidió el interdicto permanente y ordenó a la Autoridad de Energía Eléctrica (AEE) que eliminara el requisito de colegiación contenido en el Reglamento 7817.[2]

Ante esto, el 15 de mayo de 2022 el Sr. Luis Á. Pérez Ríos, la Sra. Lisa N. Spickers Sepúlveda y el Sr. Nelson Hernández Pérez (recurridos) presentaron ante el Tribunal de Primera Instancia la petición de interdicto del caso de autos en contra de LUMA. Solicitaron que se ordenara a LUMA a cesar y desistir de exigir el requisito de colegiación para todos los peritos electricistas licenciados como condición para la emisión de la certificación de instalaciones eléctricas y a proveer a los peritos no colegiados un formulario distinto al provisto por el Colegio de Peritos Electricistas para la emisión de la referida certificación.

A pesar de varios intentos entre las partes para lograr un acuerdo que finiquitara la controversia, el 7 de junio

---

[2] La AEE compareció ante el Tribunal de Apelaciones solicitando la revocación de la sentencia emitida. El 29 de septiembre de 2021, el foro apelativo intermedio confirmó la sentencia del Tribunal de Primera Instancia y esta advino final y firme.

de 2022 LUMA presentó una moción en la que informó que no pudo llegar a un acuerdo con los recurridos. En vista de esto, LUMA se allanó a que se dictara sentencia declarando que le aplican las sentencias dictadas en los casos SJ2019CV08293 y SJ2021CV02081. Siendo así, expresó que acataría una sentencia que dispusiera la obligación de aceptar certificaciones de instalación eléctrica de todo perito electricista licenciado sin requerirle prueba de su afiliación al Colegio. También expresó que acataría un mandato o directriz que le impusiera el deber de proveer un formulario distinto al provisto por el Colegio para la emisión de la certificación de instalaciones eléctricas.

En la misma fecha, los recurridos presentaron una moción informativa y en solicitud de remedio. Indicaron que LUMA rechazó llegar a un acuerdo respecto a desistir de requerir a los peritos no colegiados la cancelación de los sellos emitidos y vendidos por el Colegio para fines de la certificación de instalaciones eléctricas. Esto así, porque sostuvo que ese asunto no fue contemplado en los remedios solicitados por los recurridos e involucraba consideraciones adicionales a las resueltas en los casos número SJ2019CV08293 y SJ2021CV02081. Además, los recurridos arguyeron que requerirle a los peritos electricistas no colegiados que compraran y cancelaran los sellos vendidos por el Colegio, como condición para la emisión de sus certificaciones eléctricas, equivalía a seguir exigiéndole la colegiación obligatoria.

El 8 de junio de 2022 el Tribunal de Primera Instancia dictó una *Sentencia* mediante la cual ordenó a LUMA que cesara de: (1) continuar exigiendo el requisito de colegiación para todos los peritos electricistas licenciados como condición para la emisión de la certificación de instalaciones eléctricas, y (2) solicitar que los peritos electricista no colegiados compraran y cancelaran los sellos vendidos por el Colegio como condición para la emisión de sus certificaciones eléctricas. Asimismo, ordenó a LUMA proveer a los peritos no colegiados un formulario distinto al provisto por el Colegio de Peritos Electricistas para la emisión de la certificación de instalaciones eléctricas.

Tras enterarse de la sentencia dictada, el 24 de junio de 2022 el Colegio presentó una *Solicitud de Relevo de Sentencia por Nulidad de la Sentencia*. En síntesis, expuso que el Colegio obtenía una parte de sus ingresos económicos a través de la venta de los referidos sellos. Por esto, alegó que la sentencia dictada afectaba adversamente al Colegio y que este sufriría un daño real y concreto, de índole económico, como consecuencia de eliminar el requisito de cancelar sellos del Colegio en las certificaciones eléctricas. Además, aseveró que se dictó sentencia sin haber hecho parte del pleito al Colegio, sin emplazarlo, ni notificarle de alguna otra manera. Por tanto, argumentaron que el Colegio tenía interés en el caso, resultó adversamente afectado por el dictamen y que el remedio dictado no era adecuado ni completo. Finalmente, arguyó que el foro primario

carecía de jurisdicción a causa de la falta de parte indispensable y solicitó que se dejara sin efecto la sentencia dictada a favor de los recurridos.

El 27 de junio de 2022 los recurridos presentaron su oposición a la solicitud presentada por el Colegio. Adujeron que la Regla 49.2 de Procedimiento Civil, infra, sobre relevo de sentencia solo podía ser invocada por las partes y que el Colegio no fue parte en el caso; que LUMA se allanó a que se dictara la sentencia; que el Colegio no era parte indispensable; y que dejar sin efecto la colegiación compulsoria implicó también la imposibilidad de continuar requiriéndole a los peritos no colegiados que cancelaran sellos de una institución de la que no son miembros y de la que no reciben beneficios. Por consecuencia, adujo que el Colegio intentaba relitigar los méritos de una controversia ya adjudicada.

El 28 de junio de 2022 el Tribunal de Primera Instancia notificó una *Orden* en la que indicó que no tenía nada que proveer toda vez que no existía una solicitud del Colegio ante la consideración del Tribunal. Insatisfecho, el 29 de junio de 2022 el Colegio presentó una moción de reconsideración fundamentada en que su petición solicitaba como remedio la nulidad de la sentencia y que esta debía ser atendida. Sin embargo, el 1 de julio de 2022 el foro primario notificó una *Resolución* en la que indicó que no podía aceptar las aseveraciones del Colegio. Entre otras cosas, expresó que el Colegio no era parte demandada ni parte interventora y no

tenía legitimación activa en el presente caso. Por lo cual, declaró no ha lugar la solicitud de relevo de sentencia presentada por el Colegio.

Inconforme, el Colegio presentó un recurso de *Apelación* ante el Tribunal de Apelaciones. En su recurso presentó cinco señalamientos de error. En síntesis, planteó que el foro primario erró al: (1) resolver que el Colegio no tenía legitimación para solicitar la nulidad de la sentencia; (2) no decretar la nulidad de la sentencia por falta de parte indispensable, falta de jurisdicción y violación a su debido proceso de ley; (3) resolver que el foro primario tenía autoridad para conceder un remedio no solicitado, aun cuando este remedio perjudicaba a una parte ausente en el pleito; (4) conceder un remedio a favor de todos los peritos electricistas, terceras personas que no eran parte en el pleito; y, (5) no notificar al Secretario de Justicia la impugnación de naturaleza constitucional.

De su parte, los recurridos presentaron su alegato en oposición reiterando sus planteamientos y solicitando que se denegara el petitorio del Colegio. El 15 de agosto de 2022 LUMA también presentó su alegato en torno al recurso del Colegio y expresó que acataría cualquier determinación que procediera en derecho sobre la cancelación de los sellos del Colegio en las certificaciones eléctricas.

Así, tras examinar el recurso presentado por el Colegio junto a las comparecencias de las partes, el Tribunal de Apelaciones notificó una *Resolución*, mediante la cual acogió

el recurso de apelación como una petición de *certiorari* y denegó su expedición. El Tribunal de Apelaciones destacó que el Colegio presentó su solicitud de relevo de sentencia sin presentar una solicitud de intervención oportunamente.

El 8 de septiembre de 2022 el Colegio presentó una solicitud de reconsideración. Sin embargo, el 12 de septiembre de 2022 el Tribunal de Apelaciones notificó una *Resolución* declarando no ha lugar la solicitud de reconsideración.

En desacuerdo con lo anterior, el 11 de octubre de 2022 el Colegio presentó un recurso de *certiorari* ante el Tribunal Supremo señalando los siguientes errores:

1. Erró el Tribunal de Apelaciones al no declarar nula la sentencia del 8 de junio de 2022 del Tribunal de Primera Instancia por haberse dictado en ausencia de una parte, el Colegio, convertida por el propio Tribunal de Primera Instancia en indispensable al dictar un remedio en perjuicio de dicha parte ausente, violando así el debido proceso de ley del Colegio.

2. Erró el Tribunal de Apelaciones al no acoger el recurso del Colegio como apelación y acogerlo como *certiorari*.

3. Erró el Tribunal de Apelaciones al resolver que, acogido como *certiorari*, el recurso no cumplía los criterios para su expedición.

Con el beneficio de la comparecencia de todas las partes, resolvemos.

## II

### A. Parte indispensable

Como exigencia del debido proceso de ley, es requerido acumular a todas las partes que tengan un interés común en un

pleito. El requisito de incluir a todas las partes indispensables responde a dos principios básicos: (1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita sea uno completo. RPR & BJJ Ex Parte, 207 DPR 389, 407 (2021); Cepeda Torres v. García Ortiz, 132 DPR 698, 704 (1993). Además, la Regla 16.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, pretende proteger a las personas ausentes de los posibles efectos perjudiciales que pueda ocasionarles la resolución del caso y evitar la multiplicidad de pleitos. Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico, 2023 TSPR 26, 4 (2023).

Particularmente, esta regla define una parte indispensable como aquella persona que tiene "un interés común sin cuya presencia no pueda adjudicarse la controversia". Regla 16.1 de Procedimiento Civil, supra. Este Tribunal ha descrito una parte indispensable como aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos. Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico, supra, pág. 4; Cirino González v. Adm. Corrección et al., 190 DPR 14, 46 (2014); Deliz et als. v. Igartúa et als., supra, pág. 432; Sánchez v. Sánchez, 154 DPR 645, 678 (2001).

De igual manera, hemos aclarado que el interés común al que hace referencia la Regla 16.1 de Procedimiento Civil, supra, "no se trata de un mero interés en la controversia, sino de aquel de tal orden que impida la confección de un decreto adecuado sin afectarlo". Deliz et als. v. Igartúa et als., supra, pág. 433. Ese interés común tiene que ser un interés real e inmediato, no especulativo ni a futuro, que impida la confección de un remedio adecuado porque podría afectar o destruir radicalmente los derechos de esa parte ausente. RPR & BJJ Ex Parte, supra, pág. 408.

Asimismo, la falta de parte indispensable es un planteamiento tan vital, que se puede presentar en cualquier momento, incluyendo presentarlo por primera vez en apelación; el tribunal también puede levantarlo *motu proprio* debido a que, en ausencia de parte indispensable, el tribunal carece de jurisdicción. RPR & BJJ Ex Parte, supra, pág. 407. García Colón v. Sucn. González, 178 DPR 527, 550 (2010); Romero v. S.L.G. Reyes, supra, pág. 733; In re Vélez Báez, 176 DPR 201 (2009). Además, la omisión de traer a una parte indispensable al pleito constituye una violación al debido proceso de ley que le cobija. Romero v. S.L.G. Reyes, supra, pág. 733; Hernández Agosto v. López Nieves, 114 DPR 601, 625 (1983). Por estas razones, en ausencia de parte indispensable, la sentencia que se emita sin su presencia sería nula. Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico,

supra, pág. 5; <u>Unisys v. Ramallo Brothers</u>, 128 DPR 842, 859 (1991).

## B. Relevo de sentencia

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, establece el mecanismo procesal que tiene disponible un peticionario para solicitar el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos. Esta regla provee un mecanismo post sentencia para impedir que se vean frustrados los fines de la justicia mediante tecnicismos y sofisticaciones. <u>García Colón v. Sucn. González</u>, supra, pág. 543; <u>Ortiz Serrano v. Ortiz Díaz</u>, 106 DPR 445, 449 (1977). En lo pertinente, la regla indica:

> Mediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:
>
> (a) Error, inadvertencia, sorpresa, o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial ...;
>
> (c) fraude ... falsa representación u otra conducta impropia de una parte adversa;
>
> **(d) nulidad de sentencia;**
>
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella ...;
>
> (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
>
> 32 LPRA Ap. V, R. 49.2. (énfasis suplido)

Para que proceda el relevo de sentencia según la Regla 49.2 de Procedimiento Civil, <u>supra</u>, el peticionario del relevo está obligado a justificar su solicitud amparándose en

una de las causales establecidas en la regla. García Colón v. Sucn. González, supra, pág. 540; Reyes v. ELA et al., 155 DPR 799, 809 (2001). Nótese que, a pesar de que el relevo a una parte de los efectos de una sentencia es una decisión discrecional por parte del tribunal, esto no es así en casos de nulidad o cuando la sentencia ha sido satisfecha. García Colón v. Sucn. González, supra, pág. 540; Rivera v. Algarín, 159 DPR 482, 490 (2003); Garriga Gordils v. Maldonado Colón, 109 DPR 817, 823-824 (1980). Dígase, cuando una sentencia es nula y se solicita el relevo de la sentencia mediante el mecanismo provisto por la Regla 49.2, supra, resulta mandatorio declarar su inexistencia jurídica. García Colón v. Sucn. González, supra, pág. 544. Sobre este particular, este Tribunal ha manifestado que:

> [L]a discreción que tiene un tribunal, al amparo de las disposiciones de la referida Regla 49.2 de Procedimiento Civil, para relevar a una parte de los efectos de una sentencia resulta inaplicable cuando se trata de una sentencia que es "nula"; si es nula, no hay discreción para el relevo, hay obligación de decretarla nula. Montañez v. Policía de Puerto Rico, 150 DPR 917, 922 (2000).

La obligación de relevar a una parte de los efectos de una sentencia nula es tan inescapable que, incluso cuando la regla establece que la moción se presentará dentro de un término razonable que no exceda de seis meses de haberse registrado la sentencia, este término es inoperante ante una sentencia nula. Montañez v. Policía de Puerto Rico, 150 DPR 917, 922 (2000).

## C. Ley del Colegio de Peritos Electricistas

La *Ley del Colegio de Peritos Electricistas de Puerto Rico*, Ley Núm. 131 de 28 de junio de 1969, según enmendada, 20 LPRA sec. 2011 (Ley Núm. 131-1969), se aprobó para establecer el Colegio de Peritos Electricistas de Puerto Rico, determinar su organización y especificar sus deberes y funciones.

El Art. 8 de la Ley Núm. 131-1969 establece lo siguiente:

> Será deber de **todo perito electricista** cancelar los sellos que habrá de adoptar oficialmente el Colegio para toda certificación de instalación eléctrica radicada en cualquiera de las oficinas de la Autoridad de Energía Eléctrica de Puerto Rico de la forma que sigue a continuación:
>
> (a) Instalaciones soterradas: el importe de diez dólares ($10) en sellos.
>
> (b) Subestaciones, *switch unit* o industriales: el importe de veinte dólares ($20) en sellos.
>
> (c) Instalaciones de postes, alambrados o líneas aéreas: el importe de quince dólares ($15) en sellos.
>
> (d) Por cada metro eléctrico o medido de amperes: el importe de diez dólares ($10) en sellos para el de cien (100) amperes: el importe de veinte dólares ($20) en sellos para el de doscientos (200) amperes.
>
> (e) Reinspecciones de instalaciones o monturas para contadores vacantes: el importe de diez dólares ($10) en sellos.
>
> (f) Generadores de electricidad fijos o portátiles: el importe de diez dólares ($10) en sellos si es una instalación comercial.
>
> (g) Certificación comercial: el importe de quince dólares ($15) en sellos.
>
> 20 LPRA sec. 2018. (énfasis suplido).

El 13 de diciembre de 2003 la Asamblea Legislativa aprobó la Ley Núm. 301 del año 2003 para enmendar el Art. 8 de la

Ley Núm. 131-1969, a los fines de establecer un nuevo sistema de cancelación de sellos en la certificación de instalaciones eléctricas. En la Exposición de Motivos se explica que un cuarenta y cinco por ciento (45%) del dinero generado por la cancelación de los sellos se utiliza para que el Colegio de Peritos Electricistas lleve a cabo los servicios a la comunidad y las responsabilidades que le impuso la propia Ley Núm. 131-1969. Un cuarenta y cinco por ciento (45%) se destina al fondo de retiro, al fondo de beneficencia por muerte y al programa de becas estudiantiles del Colegio. El restante diez por ciento (10%) se remite al Departamento de Hacienda.

Posteriormente, el 1 de agosto de 2008 la Asamblea Legislativa aprobó la Ley Núm. 137 del año 2008 para enmendar el Art. 8 de la Ley Núm. 131-1969 con el fin de uniformar la cantidad del importe del sello a cancelar por la instalación de metros eléctricos y el importe del sello a cancelar por concepto de instalaciones hechas en residencias o entidades sin fines de lucro. La Exposición de Motivos de esta ley arroja luz sobre la razón por la cual se establece esta obligación de pagar los sellos:

> **El Colegio cuenta con dos fuentes básicas de ingreso**, a saber, la cuota anual que pagan sus miembros y **el 90% del producto de la venta de sellos requeridos para que los Peritos certifiquen los trabajos realizados** y que han sido efectuados de acuerdo a las normas y procedimientos aplicables, esto para la seguridad y protección de las personas y sus propiedades. El costo de estos sellos es el mismo desde que se aprobó la Ley Núm. 131, y nunca han sido revisados. **Los altos costos actuales para mantener el Colegio, pago de salarios, beneficios, pago de servicios básicos de agua, luz y teléfono, entre otros, tienen al Colegio en una situación**

**crítica de solvencia económica.** Exposición de
Motivos de la Ley Núm. 137-2008 (2008 Leyes de
Puerto Rico 714) (énfasis suplido).

Es decir, la Asamblea Legislativa estableció mediante
ley que todos los peritos electricistas tienen un deber de
cancelar los sellos del Colegio para toda certificación de
instalación eléctrica. Se creó, de esta forma, un sistema
mediante el cual un porcentaje significativo del dinero
generado por las ventas de los sellos es destinado al Colegio,
en reconocimiento de su situación económica precaria. Estos
ingresos tienen el propósito de sufragar los costos básicos
de mantenimiento del Colegio, necesarios para que este
sobreviva.

### III.

Según se relató, el Colegio presentó una *Solicitud de
Relevo de Sentencia por Nulidad de la Sentencia* el 24 de junio
de 2022. Fundamentó su solicitud en que al ordenar a LUMA a
que cesara de solicitar la compra y cancelación de los sellos
del Colegio como requisito para la emisión de sus
certificaciones eléctricas, afectó adversamente al Colegio
sin que este fuese parte en el pleito. Entonces, argumentó
que procedía decretar la nulidad de la sentencia por esta
haberse dictado sin la presencia de una parte indispensable.
El foro primario emitió una Resolución, mediante la cual
denegó la solicitud del Colegio, tras concluir que el Colegio
no era parte demandada ni parte interventora y no tenía
legitimación activa en el presente caso. Inconforme, el
Colegio acudió en revisión ante el Tribunal de Apelaciones.

Sin embargo, el foro intermedio apelativo denegó expedir el recurso del Colegio.

Habiendo reseñado la normativa relevante al caso de autos, procedemos a discutir el primer error que planteó la parte peticionaria, pues este dispone de la totalidad de la controversia.

El Colegio arguye ante nos que reúne todos los requisitos de una parte indispensable en el caso de epígrafe. Sobre esto, plantea que la sentencia ordenando que LUMA cese de requerir la cancelación de sellos del Colegio a los peritos electricistas no colegiados resultará en un perjuicio inevitable a sus ingresos. Añade que esa orden —y el consecuente perjuicio económico— ocurrió sin que se le brindara oportunidad para exponer su posición sobre la controversia y defender una de sus fuentes de ingresos principales. Concluye que, comprobado que el Colegio es parte indispensable en este caso y que estuvo ausente en el pleito, el foro primario no tenía discreción para acoger o no la solicitud de nulidad de sentencia presentada por el Colegio. Como veremos, le asiste la razón.

Como se expuso en la sección anterior, el deber de todo perito electricista de cancelar los sellos del Colegio para toda certificación de instalación eléctrica surge de la *Ley del Colegio de Peritos Electricistas de Puerto Rico*. Una lectura de la Ley Núm. 301-2003 y la Ley Núm. 137-2008 provee claridad sobre la intención de la Asamblea Legislativa al momento de establecer la referida obligación. Por un lado, en

la exposición de motivos de la Ley 301-2003 se desglosa cómo se dividirán los ingresos obtenidos de la cancelación de los referidos sellos. Nótese que la Asamblea Legislativa enfatizó que parte de la motivación detrás de establecer el nuevo sistema de cancelación de sellos era que, para el momento en que se aprobó la ley, la cancelación de sellos no estaba generando ingresos suficientes para que el Colegio pudiese descargar sus responsabilidades. Por otro lado, en la Exposición de Motivos de la Ley Núm. 137-2008 la Asamblea Legislativa reiteró que la venta de los sellos requeridos para que los peritos certifiquen los trabajos realizados era una de las dos fuentes básicas de ingreso del Colegio, la otra siendo la cuota anual que pagaban sus miembros. Además, enfatizó que el Colegio se encontraba ante una situación crítica de solvencia económica, considerando los altos costos de mantenimiento, pago de salarios, beneficios, servicios básicos de agua, luz y teléfono, entre otros.

Del propio texto de las referidas leyes surge de manera innegable que la Asamblea Legislativa diseñó el sistema de cancelación de sellos del Colegio con el propósito de crear una fuente de ingresos consistente que serviría para solventar al Colegio y permitirle descargar sus responsabilidades. Ante esto, resulta evidente que en un pleito en el cual se cuestiona el requerimiento de la cancelación de los referidos sellos, podría quedar destruido o inevitablemente afectado un interés del Colegio de tal magnitud que no puede dictarse un decreto final entre las

demás partes del pleito sin lesionar y afectar radicalmente los intereses del Colegio. **Consecuentemente, concluimos que el Colegio es una parte indispensable en el caso de epígrafe.**[3]

Dicho esto, el Colegio ostentaba legitimación para presentar una solicitud de relevo de sentencia. Como se explicó, al haberse dictado sentencia sin la presencia de una parte indispensable, esta sentencia es radicalmente nula. Además, como la sentencia es nula por falta de parte indispensable, el Colegio estaba facultado para presentar su solicitud de nulidad de sentencia en cualquier momento y no perdió esta oportunidad por no presentar ante el foro primario una solicitud para que se le añadiera al pleito como parte interventora.[4]

Finalmente, no cabe hablar de si el Tribunal de Primera Instancia abusó de su discreción al denegar la solicitud de nulidad de sentencia que presentó el Colegio, puesto que para relevar a una parte de los efectos de una sentencia nula resulta inaplicable la discreción que otorga la Regla 49.2. No estamos ante una situación en la cual hay discreción del tribunal para conceder el relevo, sino que lo que existe aquí es una obligación de decretar nulo el dictamen.

---

[3] Debido a que el Colegio fue quien solicitó la nulidad de la sentencia en el caso de epígrafe, nuestro análisis se limitó a considerar únicamente si el Colegio era parte indispensable. Esto no significa que estamos concluyendo de manera definitiva que el Colegio es la única parte indispensable que quedó fuera del pleito original.

[4] La moción que presentó el Colegio podría considerarse como una acción independiente de nulidad de sentencia. A estos efectos, nótese que el Colegio pagó los derechos de presentación correspondientes y que no fue hasta luego de aceptar el pago de aranceles que el foro primario atendió el escrito presentado por el Colegio. Véase, In re. Aprob. Derechos Arancelarios RJ, 192 DPR 397 (2015).

Resulta forzoso concluir que el Tribunal de Apelaciones erró al negarse a expedir un recurso acogido como *certiorari* que solicitaba la revocación de una *Resolución* del Tribunal de Primera Instancia que rechazó relevar a las partes de una sentencia radicalmente nula por falta de parte indispensable.

**IV**

Por los fundamentos que anteceden, se revocan las determinaciones de los foros inferiores y se concede el relevo de sentencia solicitado por el Colegio de Peritos Electricistas. Se decreta la nulidad de la Sentencia del Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Ángel Pérez Ríos; Lisa N. Spickers Sepúlveda; Nelson Hernández Pérez

    Recurridos

      v.                    CC-2022-0676

Luma Energy, LLC

    Recurrida

Colegio de Peritos Electricistas

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 16 de noviembre de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revocan las determinaciones de los foros inferiores y se concede el relevo de sentencia solicitado por el Colegio de Peritos Electricistas. Se decreta la nulidad de la Sentencia del Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García disiente sin opinión escrita. La Jueza Asociada señora Pabón Charneco no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo