ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| COMISIÓN ESTATAL DE ELECCIONES<br><br>Apelante<br><br><br>v.<br><br><br>ESPACIOS ABIERTOS, PUERTO RICO, INC.<br><br>Apelada | KLAN202301134 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil Núm.: SJ2023CV09305<br><br>Sobre: Recurso Especial de Revisión Judicial para el Acceso a la Información Pública (Ley Núm. 141-2019, según enmendada) |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**


**SENTENCIA**


En San Juan, Puerto Rico a 31 de enero de 2024.

Comparece la Comisión Estatal de Elecciones, en adelante CEE o la apelante, quien nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan, en adelante TPI. Mediante la misma, el TPI declaró ha lugar el *Recurso especial de revisión para el acceso a información pública*, presentado por Espacios Abiertos, en adelante EA o la apelada, y ordenó a la apelante la entrega de la información solicitada.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**-I-**

Según surge del expediente del pleito de epígrafe, EA presentó un *Recurso especial de revisión*

Número Identificador

SEN2024_____

*para el acceso a información pública* en el que alegó que la apelante no le suministró el sexo y la fecha de nacimiento de todos los legisladores municipales, dentro del término establecido por la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*, en adelante Ley Núm. 141-2019.[1]

Por su parte, la CEE presentó una *Moción de Desestimación y Oposición a Recurso de Revisión*. En la misma adujo que, por la naturaleza de la información requerida, es menester acumular como partes indispensables a las legislaturas municipales y a los legisladores municipales.[2] Por otro lado, indicó que la controversia no se encontraba madura porque la CEE no había finalizado el trámite administrativo sobre el pleito de epígrafe, por lo que el tribunal debía abstenerse de atender el asunto hasta que se agotaran los remedios administrativos. Además, afirmó que revelar la fecha de nacimiento y el sexo de los legisladores municipales lesionaría sus derechos fundamentales porque "otras personas" podrían utilizar la información para "descubrir otra información" y "comprometer la seguridad de estos terceros en bancos o en instituciones financieras", ocasionarles pérdidas económicas o afectar su expectativa de privacidad. Por lo tanto, alegó que, de suministrar la información solicitada, violentaría el *Registro de Electores*, la *Ley de Datos Abiertos del Gobierno de Puerto Rico*, en adelante Ley Núm. 122-2019, y la Regla 514 de las *Reglas de Evidencia*. Añadió, a su vez, que la

---

[1] Apéndice de la apelante, pág. 1.
[2] *Id.*, págs. 19-33.

divulgación de las fechas de nacimiento "sería perjudicial a los intereses del Estado, en la medida que tal divulgación podría desalentar la presentación de futuras candidaturas a cargos electos". Finalmente, la apelante destacó que accedió por error a suministrar los datos relacionados a la edad de los legisladores municipales, pero el análisis legal antes expuesto, le permitió dejar sin efecto su determinación y actuar conforme a derecho.

En desacuerdo, EA presentó una *Oposición a Solicitud de Desestimación*, en la que arguyó que la CEE custodia los datos solicitados y conforme lee el artículo 3 de la Ley Núm. 141-2019, esa información se presume pública y accesible al Pueblo y a la prensa.[3] También, adujo que los fundamentos de la apelante son incorrectos porque "los datos solicitados no corresponden a personas privadas ajenas a la función pública, sino por el contrario, se limita[n] exclusivamente a los ciudadanos que fueron electos para representar y legislar a nivel municipal". Bajo esta premisa, rebatió la alegada violación al *Registro de Electores* e indicó que la apelante, erróneamente, "equipar[a] la información electoral suministrada a la Comisión por un elector que es un ciudadano privado con la información que provee un aspirante a un puesto público electivo…". Por otro lado, la apelada argumentó que la fecha de nacimiento, "más allá de ser un dato personal es lo único que permite validar que cumple con el requisito estatutario de la edad mínima requerida para convertirse en funcionario electo". Finalmente, destacó que el artículo 4(vi) de la Ley

---

[3] Id., págs. 36-42.

Núm. 122-2019, al que alude la CEE para negar la divulgación de la información, es genérico y no dispone expresamente que la fecha de nacimiento de un funcionario público es información confidencial.

Posteriormente, la CEE presentó una *Moción en Solicitud de Desestimación, al Amparo del Artículo 13.2 del Código Electoral de Puerto Rico*, en la que alegó que, luego de celebrar una reunión ordinaria y determinar que no proveería las fechas de nacimiento de los legisladores municipales, remitió la notificación de su determinación mediante una *Resolución* a EA. Sin embargo, la apelada no presentó un recurso de revisión o moción de reconsideración en los términos provistos.[4] Así pues, concluyó que procedía desestimar la causa de acción, porque el TPI no tenía jurisdicción para atender el asunto objeto de una *Resolución* final y firme.

En total desacuerdo, EA impugnó los argumentos de la apelante.[5] Arguyó que la desestimación es improcedente en derecho, en tanto, según dispone la Ley Núm. 141-2019, cuando una entidad gubernamental no contesta dentro del término establecido por el estatuto, el solicitante puede recurrir al tribunal. Así pues, destacó que la CEE no le proveyó las fechas de nacimiento en el término dispuesto por dicha ley. Además, alegó que la CEE extendió el término *motu proprio* para celebrar una reunión y entonces le remitió la mencionada *Resolución*. En su opinión, argumentar falta de jurisdicción no es más que un subterfugio de la CEE para que las agencias o

---

[4] *Id.*, págs. 47-56.
[5] *Id.*, págs. 57-63.

custodios de información pública puedan "denegar una petición de acceso a información pública, incumplir con los términos que establece la Ley [Núm.] 141-2019 y… convertir artificialmente la petición de información pública en una supuesta controversia administrativa interna para así arrebatarle la jurisdicción al Tribunal de Primera Instancia". A su vez, adujo que el *Código Electoral de Puerto Rico* nada dispone sobre el derecho de acceso a información, por lo que el pleito de epígrafe debe ser resuelto conforme a las disposiciones de la Ley Núm. 141-2019. Por ende, descartó la aplicabilidad del artículo 13.2 del mencionado *Código*, en tanto, EA no es parte de ninguna controversia interna de la CEE, ni un comisionado electoral.

Con el beneficio de la comparecencia de ambas partes, el TPI arribó a las siguientes conclusiones:

> La CEE pretende que se utilicen los procedimientos de revisión de determinaciones de la entidad para un asunto sobre acceso a la información pública que tiene un procedimiento especial diseñado para este tipo de casos establecido por la Ley Nm. 141. No estamos ante un asunto electoral, sino ante un asunto de acceso a la información pública, según lo establece la Ley Núm. 141. Aunque la CEE es una entidad *sui generis*, esta no es una entidad que no le es de aplicación lo que dispone la Ley Núm. 141, las cuales aplican "al Gobierno de Puerto Rico, entiéndase la Rama Legislativa, Rama Judicial y Rama Ejecutiva, incluyendo en esta a todas las entidades gubernamentales, corporaciones públicas y los municipios. De igual forma [,] aplica a terceros custodios de información o documentos públicos". 3 LPRA sec. 9912. La amplitud del artículo 2 de la Ley Núm. 141 incluye a la CEE como una entidad gubernamental, por lo que le aplica el procedimiento establecido por este, no el procedimiento que establece el Código Electoral. La CEE no contestó el requerimiento de información dentro del término de 10 días que dispone la ley. En consecuencia, no procede la desestimación por falta de jurisdicción, puesto que EA presentó su acción según lo establecido por la Ley Núm. 141.
>
> . . . . . . . .

La fecha de nacimiento está incluida en los documentos necesarios para que una persona pueda solicitar para un puesto electivo, como deben hacerlo los Legisladores Municipales… Ahora bien, lo que está solicitando son las fechas de nacimiento de las personas que fueron ya electas como Legisladores Municipales… Todas las personas que desean ser aspirantes para un cargo público electivo tienen la obligación de llenar una serie de formularios y presentar una serie de documentos y certificaciones. Véase el Art. 7.2 del Código Electoral de 2020, 16 LPRA sec. 4612. Por lo tanto, los formularios que crea la CEE, y que están obligados a presentar los aspirantes a un puesto político, son creados por la CEE. Adicionalmente, estos formularios y los documentos que presentan los aspirantes se conservan y reciben por la CEE. Por lo tanto, la información que está solicitando EA se debe considerar como información pública. **No estamos ante el caso de que se está solicitando la información de un elector, sino la información de un aspirante que, al presente, es un funcionario público electo.**[6]

Aún inconforme, la CEE presentó una Apelación en la que invoca la comisión de los siguientes errores:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA (TPI), AL HACER UNA APLICACIÓN INCORRECTA EN DERECHO DE LA PETICIÓN DE INFORMACIÓN, APLICANDO LA LEY 141-2019, EN LUGAR DE LAS DISPOSICIONES DEL CÓDIGO ELECTORAL VIGENTE; Y AL NO DESESTIMAR POR FALTA DE JURISDICCIÓN EL RECURSO INTERPUESTO.

ERRÓ EL TPI, AL NO HABER DESESTIMADO EL RECURSO DE ESPACIOS POR FALTA DE PARTES INDISPENSABLES.

ERRÓ EL TPI, AL DECIDIR QUE LA INFORMACIÓN SOLICITADA NO DEBE SER MANTENIDA CONFIDENCIALMENTE POR LA CEE, A PESAR DE QUE ES PARTE DEL REGISTRO GENERAL DE ELECTORES.

Oportunamente, EA presentó su alegato.

Luego de revisar los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

-II-

A.

En nuestro ordenamiento jurídico se ha reconocido que el derecho de acceso a la información pública goza de rango constitucional. Este derecho "faculta a la ciudadanía a exigirle al gobierno que rinda cuentas sobre su gestión, lo que resulta esencial para lograr

---

[6] *Id.*, págs. 66-77. (Énfasis en el original).

una mayor transparencia gubernamental".[7] En aras de cumplir con esta obligación, la Asamblea Legislativa aprobó la Ley Núm. 141-2019, cuyo objetivo es:

> [F]omentar una cultura inequívoca de apertura sobre las gestiones del Gobierno, establecer una política pública proactiva sobre rendición de cuentas a la ciudadanía, desalentar los actos de corrupción o antiéticos, promover la participación ciudadana e instituir normas y principios claros, ágiles y económicos para el ejercicio pleno del derecho de acceso a la información pública.[8]

Las disposiciones de la Ley Núm. 141-2019 rigen sobre las gestiones de todas las entidades gubernamentales, incluyendo a las Ramas Legislativa, Judicial y Ejecutiva, así como a las corporaciones públicas, los municipios, e incluso terceros custodios de información o documentos públicos.[9] En particular, el Artículo 4 expone el marco de referencia para la divulgación de información pública al establecer que la "entidad gubernamental tiene el deber de divulgar en su página electrónica oficial, de forma periódica, proactiva y actualizada, la información sobre su funcionamiento, la ejecución y control de las funciones delegadas, así como toda documentación pública que sea realizada por la entidad de forma rutinaria".[10] En la alternativa, la ciudadanía puede optar por "solicitar información pública mediante solicitud escrita o por vía electrónica, sin necesidad de acreditar algún interés particular o jurídico".[11]

Además, el mencionado estatuto dispone para que su interpretación sea "en la forma más liberal y beneficiosa para la persona solicitante de información

---

[7] Exposición de Motivos, Ley Núm. 141-2019 (3 LPRA sec. 9911 *et seq.*).
[8] *Id.*
[9] Art. 2 de la Ley Núm. 141-2019 (3 LPRA sec. 9912).
[10] Art. 4 de la Ley Núm. 141-2019 (3 LPRA sec. 9914).
[11] Art. 6 de la Ley Núm. 141-2019 (3 LPRA sec. 9916).

pública. En caso de conflicto entre [sus disposiciones] y la[s] de cualquier otra legislación, prevalecerá aquella que resulte más favorable para la persona solicitante de información y documentación pública."[12]

A tenor con la Ley Núm. 141-2019, el Tribunal Supremo de Puerto Rico ha interpretado que cuando se pretenda utilizar una ley o reglamento para negar al ciudadano el acceso a información pública, el Estado debe satisfacer el escrutinio judicial estricto.[13] En concreto, deben cumplirse los siguientes requisitos: (1) que una ley así lo declara; (2) que la comunicación está protegida por algún privilegio evidenciario; (3) que la divulgación de la información puede lesionar derechos fundamentales de terceros; (4) que se trate de un confidente, según la Regla 515 de Evidencia de 2009 (32 LPRA Ap. VI), o (5) que sea información oficial conforme a la Regla 514 de Evidencia de 2009 (32 LPRA Ap. VI).[14] Así pues, en caso de controversia, la balanza debe inclinarse a favor del derecho a la información y en contra del privilegio.[15] De modo que, no puede prevalecer ninguna legislación que establezca una norma de confidencialidad absoluta si no contiene los estándares apropiados para determinar el tipo de documento e información que estará sujeta al escrutinio público.[16]

---

[12] Art. 12 de la Ley Núm. 141-2019 (3 LPRA sec. 9922).
[13] *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 210 (2021).
[14] *Kilómetro 0 v. Pesquera López et al.*, *supra*. Véase, además, *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR 161, 178 (2000).
[15] *Kilómetro 0 v. Pesquera López et al.*, *supra*, pág. 218. *López Vives v. Policía de Puerto Rico*, 118 DPR 219, 233 (1997).
[16] *Nieves v. Junta*, 160 DPR 97, 104 (2003).

Finalmente, resulta conveniente destacar que según la Ley Núm. 141-2019, la entidad gubernamental a la que se le haya solicitado la información deberá producirla en un término no mayor de diez (10) días laborables, o quince (15) días si es una oficina regional, los cuales son prorrogables dentro del término provisto.[17] Si dicha entidad no contesta dentro del término establecido, se entenderá que la ha denegado y el solicitante podrá recurrir al TPI mediante un Recurso Especial de Revisión Judicial.

**B.**

La acumulación indispensable de partes está gobernada por la Regla 16 de Procedimiento Civil.[18] Así pues, una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada en su ausencia.[19] Esta regla persigue el propósito de proteger a la persona ausente de los posibles efectos perjudiciales de un dictamen judicial y evitar la multiplicidad de pleitos.[20]

Específicamente, la Regla 16.1 de Procedimiento Civil dispone:

> Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.[21]

Una vez se concluya que una parte es indispensable, el pleito no podrá adjudicarse sin su

---

[17] Art. 7 de la Ley Núm. 141-2019 (3 LPRA sec. 9917).
[18] Regla 16 de Procedimiento Civil, 32 LPRA, Ap. III, R. 16.
[19] *Pérez Ríos v. Luma Energy LLC.,* 2023 TSPR 136, __ DPR __ (2023).
[20] *Pérez Ríos v. Luma Energy LLC., supra.*
[21] Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. III, R. 16.1.

presencia.[22] En tal caso, dicha persona tiene que hacerse formar parte en el pleito.

> De tal arraigo es el interés de proteger a las partes indispensables, que la no inclusión en el pleito de una parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso. Incluso, los tribunales apelativos deben levantar *motu proprio* la falta de parte indispensable, debido a que ésta incide sobre la jurisdicción del tribunal. De reconocerse que está ausente una parte indispensable, debe desestimarse la acción. Sin embargo, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada.[23]

Finalmente, el estándar que debe cumplir quien alega ser parte indispensable en un pleito consiste en establecer un interés común con el que demuestre que sin su presencia no puede adjudicarse la controversia. Adviértase que no se trata de un mero interés en la controversia, sino de aquel de tal orden que impida la confección de un decreto adecuado sin afectarlo.[24] Este debe ser, además, de índole real e inmediato.[25]

## -III-

En síntesis, la apelante alega que el TPI debió desestimar la causa de acción por falta de jurisdicción. Específicamente, porque al momento en que la apelada presentó el *Recurso Especial de Revisión Judicial para el Acceso a Información Pública*, la CEE había emitido una *Resolución* final y firme. Arguye que, por tratarse de un asunto técnico, la CEE cuenta con jurisdicción exclusiva y la EA debió agotar los remedios administrativos conforme dispone el *Código Electoral de 2020*. Aduce que la

---

[22] *Pérez Ríos v. Luma Energy LLC., supra*; *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007).
[23] *Pérez Rosa v. Morales Rosado, supra,* págs. 223-224. (Citas omitidas).
[24] *Pérez Ríos v. Luma Energy LLC., supra*; *Deliz Muñoz v. Igartúa*, 158 DPR 403 (2003); *Sánchez Encarnación v. Sánchez Brunet*, 154 DPR 645 (2001).
[25] *FCPR v. ELA et al.*, 211 DPR 521, 531 (2023).

desestimación también era procedente por falta de partes indispensables, a saber, las legislaturas y los legisladores municipales. A su entender, divulgar sus fechas de nacimiento afecta adversamente los derechos propietarios de estos funcionarios públicos, porque los expondría a diversos riesgos como fraudes en sus cuentas bancarias. Por otro lado, argumenta que la información solicitada es confidencial porque forma parte del *Registro General de Electores* y "no se puede divulgar para fines ajenos o divorciados de los fines electorales para los cuales dichos ciudadanos proveyeron la información". A su vez, colige que suministrar las fechas de nacimiento "sería perjudicial a los intereses del Estado, en la medida que tal divulgación podría desalentar la presentación de futuras candidaturas a cargos electos".

En cambio, EA alega que el derecho de acceso a información está regulado por la Ley Núm. 141-2019 y no por el *Código Electoral 2020*. Por consiguiente, afirma que el artículo 13.2 de dicho *Código* no es aplicable, en tanto la controversia se trata del reclamo de un derecho constitucional y no de un asunto de naturaleza electoral. Finalmente, insiste en que la información solicitada es sobre funcionarios públicos electos y no de electores o personas privadas. A su vez, destaca la inexistencia de legislación que establezca la confidencialidad de las fechas de nacimiento y el sexo de los funcionarios públicos.

De la normativa previamente expuesta se desprende que la Ley Núm. 141-2019 es una ley especial en materia del derecho de acceso a información pública en Puerto Rico, por lo que las reglas de hermenéutica

establecen que esta debe prevalecer sobre las disposiciones del *Código Electoral de 2020*, que nada dispone sobre el derecho de acceso a información pública. Como cuestión de hecho, es la única ley existente en Puerto Rico que viabiliza el derecho constitucional de acceso a información pública, corolario del derecho a la libertad de expresión. Así pues, de una lectura atenta de las disposiciones de la Ley Núm. 141-2019, no se puede concluir, bajo ningún supuesto razonable, que a la CEE no le aplica dicho ordenamiento.

Debemos añadir, que la información solicitada no es de naturaleza confidencial, en tanto concierne a funcionarios electos que, entre otros requisitos, deben cumplir con una edad mínima para ejercer como legisladores municipales y no sobre electores individuales. En otras palabras, las fechas de nacimiento, así como el sexo de cada legislador municipal se presume información pública, en la medida en que no existe legislación o privilegio alguno que le imprima carácter confidencial.

Por otro lado, la apelante no nos puso en posición para determinar que, de no incluir como partes indispensables a las legislaturas municipales y a los legisladores municipales, sus derechos e intereses podrían quedar destruidos o inevitablemente afectados. Las alegaciones presentadas son, en el mejor de los casos, generales, imprecisas y muy especulativas.

Finalmente, el intento artificioso de construir jurisdicción administrativa para atender como foro primario la controversia ante nuestra consideración,

tiene que ceder ante la interpretación liberal y a favor de la divulgación de la Ley Núm. 141-2019. En consecuencia, la determinación del Tribunal de Primera Instancia amerita nuestra deferencia.

**-IV-**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones