Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| MANNY DÁVILA, INC.<br><br>Apelante<br><br>V.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEPARTAMENTO DE JUSTICIA, REGISTRO DE LA PROPIEDAD SECCIÓN TERCERA DE SAN JUAN<br><br>Apelada | KLAN202400003 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV04733 (903 CIVIL)<br><br>Sobre: SENTENCIA DECLARATORIA |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de febrero de 2024.

La parte apelante, Manny Dávila Inc., acude ante nos de una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 27 de octubre de 2023, notificada el 30 del mismo mes y año. Mediante el referido dictamen, el foro primario desestimó una *Demanda* presentada por la parte apelante por falta de parte indispensable.

Los hechos esenciales para comprender la determinación que hoy alcanzamos se incluyen a continuación.

**I.**

El 19 de mayo de 2023, la parte apelante presentó una *Demanda* en contra del Estado Libre Asociado de Puerto Rico (ELA) y el Registrador de la Propiedad. En la misma, indicó que era propietaria de la Finca 4878, la cual constaba inscrita en el Folio 217 del Registro de la Propiedad (Registro) de San Juan, Sección III. De la descripción de la finca surge que, inicialmente, la misma se inscribió con una cabida superficial de 252.00 metros cuadrados.

Sin embargo, posteriormente, en virtud de una *Resolución* emitida por el foro primario el 8 de marzo de 1974, se le añadió a la descripción registral que la cabida se extendía en la parte de atrás con un área de 348.00 metros, que, sumados a los 252.00 metros, hacían un total de 600.00 metros cuadrados.

La corporación detalló que la referida finca estaba gravada por dos hipotecas, una primera hipoteca en garantía de un pagaré a favor de Doral Mortgage, la cual fue constituida por la Escritura Núm. 259, otorgada el 29 de agosto de 2003, e inscrita en el Folio 116 del Tomo 939 del Registro; y otra en garantía de un pagaré a nombre de Amelia Zorrilla Roig y Beatriz Zorrilla Roig, otorgada el 6 de agosto de 2008, e inscrita en el Folio 166 del Tomo 839.[1] Alegó que se percató que la Escritura Núm. 259 detallaba, erróneamente, que la cabida total de la finca era de 252.00 metros cuadrados. Ante ello, planteó que la calificación e inscripción de dicha escritura constituía un error que hacía nula la extensión del asiento registral. A su vez, afirmó que la inscripción del asiento tuvo el efecto de segregar la finca de forma ilegal, puesto que se expresó una cabida distinta a la descrita anteriormente en el tracto de la finca.

Así, pues, le solicitó al tribunal de instancia que emitiera una sentencia declaratoria, mediante la cual indicara que la inscripción de la hipoteca era nula y ordenara al Registrador de la Propiedad (Registrador) a remover el asiento de los libros.

El 31 de julio de 2023, el ELA, por sí y en representación del Registro, compareció mediante una *Moción de Desestimación*. En el pliego, aseveró que, el solo hecho de haberse descrito la cabida de la finca incorrectamente, no hacía nula la hipoteca a favor de Doral Mortgage. Explicó que lo que procedía en derecho era rectificar el error mediante el mecanismo provisto por la Ley del Registro de la

---

[1] Apéndice del recurso, págs. 50-61.

Propiedad o que el notario que autorizó la escritura realizara un acta de subsanación. Además, aseveró que, conforme al referido estatuto, para rectificar el error se requería el consentimiento de los acreedores hipotecarios, o, en ausencia de dicho consentimiento, presentar una acción en contra de ellos y de todos los que el asiento le conceda algún derecho. Así, pues, el ELA argumentó que, al no haberse acumulado a Doral Mortgage y a las señoras Zorrilla Roig, como partes en la *Demanda*, la misma debía de desestimarse por falta de partes indispensables. Por otra parte, añadió, que el Registrador de la Propiedad no podía ser parte, ni testificar, en casos en los cuales se dilucidaba la validez de los documentos presentados ante el Registro o se planteaba la nulidad de un asiento.

El 28 de agosto de 2023, Manny Dávila, Inc., se opuso a la desestimación. Insistió que la descripción incorrecta de la cabida de su finca en la Escritura Núm. 259 tuvo el efecto de segregar y disminuir la cabida de esta. En virtud de ello, le solicitó al foro primario que declarara *No Ha Lugar* la *Moción de Desestimación* presentada por el ELA.

Luego de que las partes presentaran sendos escritos reiterando sus posturas, el 27 de octubre de 2023, notificada el 30 del mismo mes y año, el foro *a quo* emitió la *Sentencia* que nos ocupa. Mediante el referido dictamen desestimó la acción presentada por la parte aquí apelante. Basó su determinación en que era improcedente la nulidad del asiento, y coincidió con el ELA en que lo que procedía en el presente caso era rectificar el error o realizar un acta de subsanación. Además, concluyó que Doral Mortgage y las señoras Zorrillas Roig eran partes indispensables.

En desacuerdo, Manny Dávila, Inc. presentó reconsideración, la cual fue declarada sin lugar el 30 de noviembre de 2023, por el tribunal de instancia. Aún inconforme, compareció ante esta Curia

el 2 de enero de 2024. Planteó que el foro primario cometió los errores siguientes:

> Erró el Tribunal de Primera Instancia al dictar sentencia desestimatoria por alegadamente faltar una parte indispensable.

> Erró el Tribunal de Primera Instancia al dictar sentencia desestimatoria sin tomar en consideración que la extensión del Asiento 18 de la Finca 4878 tiene el efecto de segregar dicha finca ilegalmente.

> Erró el Tribunal de Primera Instancia al no distinguir entre el "contrato hipotecario" suscrito al amparo de la Escritura de Hipoteca #259 del 2003, y la inscripción errónea del Registro de dicha escritura de hipoteca.

> Erró el Tribunal de Primera Instancia al determinar que los remedios de la rectificación y/o la subsanación de la Escritura de la Hipoteca #259 hacen innecesaria la comparecencia y solicitud de sentencia declaratoria.

El 2 de febrero de 2024, el ELA presentó su oposición al recurso.

Antes de comenzar la discusión de los errores alegados, conviene delimitar el trasfondo normativo aplicable al caso ante nos.

## II.

### A. Sentencia Declaratoria

La sentencia declaratoria es un remedio que provee la Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.1, para declarar derechos, estados y otras relaciones jurídicas, aunque existan otros remedios disponibles. El referido remedio puede solicitarlo cualquier persona que interese que se dicte una declaración de derecho, estados u otras relaciones jurídicas, o que se aclare alguna divergencia en la interpretación o validez de un estatuto, ordenanza, contrato o franquicia. 32 LPRA Ap. V, R. 59.2; Véase, *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 109 (2020). Asimismo, se podrá obtener una sentencia declaratoria para esclarecer los derechos o relaciones jurídicas en casos que traten sobre la administración de fideicomisos, fundaciones, bienes de personas difuntas, personas menores incapacitadas o insolventes. Regla 59. 2(b), *supra,* 32 LPRA

Ap. V, R. 59.2. Ahora bien, lo anterior no limita la facultad del tribunal para emitir una sentencia declaratoria en cualquier procedimiento que se solicite un remedio declaratorio, siempre que el dictamen ponga fin a la controversia o a la incertidumbre jurídica. *Íd.*, Regla 59. 2(c).

El Tribunal Supremo ha constantemente definido la sentencia declaratoria como un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita". *Rosario Rodríguez v. Rosado Colomer et al.*, 208 DPR 419, 427 (2021); *Alcalde de Guayama v. ELA,* 192 DPR 329, 333 (2015). Así, pues, la sentencia declaratoria, únicamente, puede ser dictada cuando exista una controversia sustancial, madura y real entre partes con intereses legales adversos. *Mun. Fajardo v. Srio. Justicia et al.,* 187 DPR 245, 254-255 (2012). Es decir, la parte promovente debe demostrar la existencia o inminencia de un daño claro y real, no imaginario o hipotético. *Senado v. Tribunal Supremo y Otros,* 208 DPR 115, 134 (2021).

## B. Corrección de documentos públicos

La Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.,* faculta a los notarios para corregir ciertos documentos públicos. *Crespo Rodríguez v. González González*, 208 DPR 557, 581 (2022). A esos fines, el Art. 29 del referido estatuto establece que:

> […]
>
> [si] se dejase de hacer constar por el notario algún dato o circunstancia dispuesto por esta Ley, o si se tratase de error en el relato de hechos presenciados por el notario que corresponda a este consignar, podrán estas faltas ser subsanadas por el notario autorizante a sus expensas, por propia iniciativa o a instancia de cualesquiera de las partes, por medio de acta notarial en que se haga constar el defecto o error, su causa y la declaración que lo subsana.
>
> […]. 4 LPRA sec. 2047.

El notario puede corregir los instrumentos públicos mediante un acta de subsanación o una escritura de rectificación. *In re Godinez Morales*, 161 DPR 219, 250 (2004). La Regla 39 del Reglamento Notarial de Puerto Rico define el acta de subsanación como un instrumento que redacta el notario, sin intervención de las partes otorgantes, con el propósito de corregir los defectos y omisiones que adolezca un instrumento público. 4 LPRA Ap. XXIV, R. 39. A su vez, el referido cuerpo normativo enumera varios supuestos en los que un notario puede autorizar un acta de subsanación, entre ellos: (1) corregir o añadir el nombre o apellidos de los comparecientes, así como sus circunstancias personales; (2) la omisión o incorrección en la descripción de una propiedad cuando se haga para conformar la información en el instrumento a cualquier información que surja del Registro de la Propiedad, y (3) la falta de expresión notarial sobre la identidad o la capacidad de las personas otorgantes. *Crespo Rodríguez v. González González*, supra, pág. 582. Igualmente, aclara que se podrá subsanar un error o una omisión mediante dicha acta en todos los casos en que la subsanación no modifique o supla la voluntad las personas comparecientes, ni altere la esencia del instrumento. Regla 39 del Reglamento Notarial de Puerto Rico, *supra.*

De lo anterior se desprende que, mediante un acta de subsanación, el notario puede corregir la escritura pública *motu proprio*, sin necesidad de la presencia de las personas comparecientes. Ello, siempre que la subsanación no afecte sustancialmente el contrato o negocio jurídico objeto del instrumento público. *Crespo Rodríguez v. González González*, supra, pág. 583; *In re Godinez Morales*, supra, págs. 250–251. Por otra parte, precisa señalar que quien tiene la facultad de realizar un acta de subsanación es el notario autorizante. Otro notario podrá

autorizar la referida cuando el autorizante haya sido suspendido. Regla 39 del Reglamento Notarial de Puerto Rico, *supra.*

Ahora bien, si el error u omisión se relaciona al negocio jurídico, será necesaria la presencia de las personas que otorgaron el instrumento público para poder subsanar el error. En esas circunstancias, no podrá realizarse un acta de subsanación, y se deberá otorgar una escritura de rectificación. *Crespo Rodríguez v. González González,* supra, pág. 583.

## C. Inexactitudes en el Registro de la Propiedad

En cuanto a las inexactitudes en el Registro de la Propiedad, el Art. 211 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, 30 LPRA sec. 6351 (Ley del Registro de la Propiedad), indica que se entenderá como "todo desacuerdo que en orden a los derechos inscribibles exista entre aquél y la realidad jurídica extraregistral".[2] Es decir, hay una inexactitud en el Registro cuando no existe concordancia entre el contenido de los libros registrales y el verdadero estado jurídico de los derechos reales inmobiliarios inscritos. *Dist. Unidos Gas v. Sucn. Declet Jiménez,* 196 DPR 96, 119 (2016).

El referido estatuto permite que las inexactitudes en el registro se corrijan por el Registrador, de oficio o a solicitud de parte interesada, siempre que se tenga el instrumento que motivó la acción. Art. 214 de la Ley del Registro de la Propiedad, *supra,* 30 LPRA sec. 6354. Sin embargo, cuando la rectificación pudiera afectar los derechos de los titulares inscritos, se requerirá que estos consientan a que se corrija el error o que se emita una resolución judicial ordenando la corrección del asiento. *Íd.; Crespo Rodríguez v.*

---

[2] Precisa señalar que, aunque la Escritura Núm. 259 se otorgó en el 2003, y la ley vigente para ese entonces era la Ley Hipotecaria y del Registro de la Propiedad, 30 LPRA sec. 2001 *et seq.* (derogada), en las cláusulas de transición de Ley del Registro de la Propiedad actual se explica que, "[a] partir de la vigencia de esta Ley [...] se estará a lo establecido en la ley y reglamento anterior en todo lo que le sea incompatible. El derecho aplicable al presente caso se mantuvo inalterado. Por ello, nos referimos en adelante, únicamente, a la ley actual.

*González González,* supra, pág. 581; *DLJ Mortgage v. García Ramos,* 207 DPR 28, 51 (2021); *Cruz Fontánez v. Registrador,* 126 DPR 182, 185 (1990). Asimismo, cuando la inexactitud proceda de la falsedad, nulidad o **defecto del título que motivó el asiento**, la rectificación requerirá el consentimiento del titular afectado por ella o, a falta del mismo, una resolución judicial. Art. 212 de la Ley del Registro de la Propiedad, *supra,* 30 LPRA sec. 6352.

**D. Parte Indispensable**

Finalmente, huelga destacar que la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, dispone que: "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. [...]" Así, pues, una parte indispensable es aquella de la cual no se puede prescindir. Su interés en la cuestión es de tal magnitud que no puede dictarse un decreto final entre las otras partes, sin lesionar y afectar radicalmente sus derechos. *Pérez Ríos et al v. Luma Energy, LLC,* 2023 TSPR 136, 213 DPR ___ (2023). De modo que los intereses de esa parte, ausente del litigio, podrían quedar destruidos o inevitablemente afectados por una sentencia.

La referida disposición atiende dos principios, primeramente, impide que una persona se le prive de su libertad o propiedad sin el debido proceso de ley y, por otro lado, la necesidad de que se emita un decreto judicial completo. *Colón Negrón et al v. Mun. Bayamón,* 192 DPR 499, 510 (2015); *Cepeda Torres v. García Ortiz,* 132 DPR 698, 704 (1993). El "interés común" al que hace referencia la Regla 16.1*, supra,* no es cualquier interés en el pleito, tiene que ser de tal orden que impida producir un resultado sin afectarlo. *Pérez Ríos et al v. Luma Energy, LLC,* supra. Además, tiene que ser real e inmediato. No puede tratarse de meras especulaciones, ni de un interés futuro. *García Colón et al v. Sucn. González,* 178 DPR 527,

548-549 (2010). Esta disposición persigue evitar la multiplicidad de pleitos y los efectos que una sentencia adversa puede tener sobre alguien que no está en el pleito. *Colón Negrón et al v. Mun. Bayamón*, supra, pág. 510; *Cirino González v. Adm. de Corrección et al*, 190 DPR 14, 46 (2014).

El concepto de parte indispensable tiene un alcance restringido, ya que requiere demostrar que la adjudicación tendría un efecto perjudicial sobre los intereses reales e inmediatos de la persona ausente en el pleito. *García Colón et al v. Sucn. González*, supra, pág. 549. Ante ello, la determinación de si una parte es o no indispensable, hace necesario un enfoque pragmático. Se requiere una evaluación individual a la luz de las circunstancias particulares de cada caso y no la utilización de una fórmula con pretensiones omnímodas. El propósito de la Regla 16.1, *supra,* es proteger a la persona que no está presente en el pleito de los efectos legales de la sentencia. Además, de evitar la multiplicidad de pleitos, mediante un remedio efectivo y completo. *García Colón et al v. Sucn. González, supra*, págs. 549-550.

En ausencia de parte indispensable, el tribunal carece de jurisdicción sobre la persona y la sentencia que se emita sin su presencia sería nula. El omitir incluir una parte indispensable en un caso, acarrea una violación al debido proceso de ley que la cobija. Dicha parte tiene que ser traída al pleito, ya que la Regla 16.1, *supra,* se fundamenta en la protección constitucional que impide que una persona sea privada de su libertad o propiedad sin el debido proceso de ley. *Pérez Ríos et al v. Luma Energy, LLC,* supra; *García Colón et al v. Sucn. González,* supra, págs. 550-551.

**III.**

La parte apelante cuestiona la determinación del tribunal de instancia de desestimar su causa de acción. Tras evaluar el

expediente ante nuestra consideración, nos es forzoso confirmar el dictamen emitido por el foro *a quo.*

Conforme esbozamos en nuestra previa exposición doctrinal, el remedio de la sentencia declaratoria, únicamente, procede cuando existe un daño claro y real. De una lectura de los escritos instados por Manny Dávila Inc., colegimos que este no demostró que la descripción errónea de la Finca 4878 en la Escritura Núm. 259 le causó un peligro inminente, como requiere el ordenamiento jurídico vigente sobre las sentencias declaratorias.

Precisa señalar que, posterior a la inscripción de la mencionada escritura, logró un asiento registral de una hipoteca a favor de Amelia Zorrilla Roig y Beatriz Zorrilla Roig, la cual expresaba la cabida correcta de la propiedad inmueble de 600.00 metros cuadrados. Por ello, no es posible validar el argumento de la parte apelante en cuanto a que la inscripción de la hipoteca constituida a favor de Doral Mortgage tuvo el efecto de segregar y reducir la cabida de la mencionada finca.

Por otra parte, el apelante pretendía que el foro primario declarara nula la referida hipoteca, sin haber acumulado a Doral Mortgage en el pleito. No era posible que el foro primario emitiera una sentencia, a esos fines, sin lesionar y afectar radicalmente los derechos de la referida institución financiera. Igualmente, era necesaria la presencia de las señoras Zorrilla Roig, puesto que, al momento de estas otorgar la Escritura Núm. 36 en el año 2008, el tracto registral detallaba que la primera hipoteca de la Finca 4878 grababa, únicamente, 252.00 metros cuadrados. Sin la presencia de estas en el litigio, sus intereses también podían quedar afectados. Así, pues, en ausencia de Doral Mortgage y las señoras Zorrilla Roig, el tribunal de instancia no tenía jurisdicción para emitir una sentencia sin su presencia. Por ello, resolvemos que el referido foro no incidió en su discreción al desestimar la acción de epígrafe.

Si el deseo del apelante es que el tracto registral refleje la realidad jurídica real o que, en su día, Doral Mortgage pueda ejecutar la totalidad de la finca por razón de impago, como bien le ilustró el tribunal de instancia, cuenta con el mecanismo de la rectificación y el acta de subsanación. Según reseñamos, mediante un acta de subsanación o escritura de rectificación, el apelante podrá corregir la descripción de su propiedad en la Escritura Núm. 259. Por su parte, mediante el mecanismo de rectificación que provee la Ley del Registro de la Propiedad, *supra*, podrá corregir la inexactitud en el tracto registral suscitada por el error en el instrumento público.

**IV.**

Por lo antes expuesto, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones