ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Recurrido<br><br>Vs.<br><br>RUBÉN ALICEA MARRERO Y ARLENNE IVETTE DE LA CRUZ PÉREZ<br><br>Peticionaria | KLCE202400782 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. FBCI2013-001836<br><br>Sobre: EJECUCIÓN DE HIPOTECA IN REM |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de octubre de 2024.

Comparece el señor Rubén Alicea Marrero y la señora Arlenne Ivette de la Cruz Pérez (en adelante, parte peticionaria), para solicitarnos que se revise y revoque la *Orden* emitida el 28 de mayo de 2024 y notificada el 26 de junio del mismo año por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, "TPI"), en la cual declaró *No Ha Lugar* la solicitud de relevo de sentencia.[1]

Acompañado con este recurso, la parte peticionaria radicó una *Moción en Auxilio de Jurisdicción*, la cual declaramos *Ha Lugar* el 15 de julio de 2024 y concedimos a la parte recurrida, Banco Popular de Puerto Rico, (en adelante, BPPR o parte recurrida), hasta el 12 de agosto de 2024 para presentar su postura sobre el recurso. El 12 de agosto de 2024, la parte recurrida compareció.

Con el beneficio de la comparecencia de las partes y por los fundamentos que expondremos a continuación, dejamos sin efecto

---

[1] Apéndice VII del Recurso de *Certiorari*, pág. 57.

Número Identificador

SEN2024 _____

la paralización de los procedimientos, expedimos el auto y confirmamos el recurso de *Certiorari* presentado.

**-I-**

El 30 de septiembre de 2004, la parte peticionaria otorgó ante el notario Luis Fernando Castillo Cruz, testimonio número 5190, un pagaré a favor de Doral Bank o a su orden, mediante el cual se obligó a pagar la suma principal de $231,060.00 más intereses desde esa fecha hasta el pago total del principal a razón del 5.950% de interés anual sobre el balance adeudado.[2]

Para garantizar el pago de dicho pagaré, se otorgó una hipoteca voluntaria mediante la escritura número 673, el día 30 de septiembre de 2004, ante el notario Luis Fernando Castillo Cruz, sobre el bien inmueble que se describe a continuación:[3]

> URBANA: Parcela identificada en el plano de inscripción como el Solar Diez (10) del Bloque N de la Urbanización River Garden, localizada en el Barrio Canóvanas del municipio de Canóvanas, Puerto Rico, con una cabida superficial de trecientos ochenta y tres punto cuatro mil cuarenta (383.4040) metros cuadrados. En lindes:  por el NORTE, con el solar nueve (9) del bloque N; por el SUR, con el solar once (11) del bloque N; por el ESTE, con la Calle Lirio; y por el OESTE, con los solares treinta (30) y treinta y uno (31) del bloque N.  Enclava en dicho solar una residencia de concreto de dos plantas.-------------------
>
> ---Dicha propiedad consta inscrita en el Folio 36 del Tomo 428 (ágora) de Canóvanas finca número 17145, en el Registro de la Propiedad de Carolina, Sección Tercera.  La hipoteca consta inscrita en el Folio 36 del Tomo 428 de Canóvanas finca número 17145, en el Registro de la Propiedad de Carolina, Sección Tercera, inscripción segunda. --------------------------------------

El 2 de diciembre de 2013, Doral Bank (ahora, Banco Popular de Puerto Rico) presentó la actual demanda en ejecución de hipoteca, dado el alegado incumplimiento de la parte peticionaria con las obligaciones y condiciones pactadas en la

---

[2] Apéndice IX del Recurso de *Certiorari*, pág. 62-66.
[3] Apéndice X del Recurso de *Certiorari*, pág. 67-90.

escritura de hipoteca y por haberse declarado vencido el pagaré hipotecario.[4]

Al momento de la presentación de la demanda, ya la parte peticionaria había obtenido una Orden de Descargo del Tribunal de Quiebras fechada a 9 de enero de 2012, por lo que dicha demanda fue radicada como una ejecución de hipoteca *In Rem*.[5] Así las cosas, el 14 de febrero de 2014, la parte peticionaria presentó *Contestación a la Demanda*.[6]

El 23 de febrero de 2015 y notificada el 26 de febrero del mismo año, el TPI dictó *Sentencia Sumaria* la cual fue objeto de una apelación.[7] A esos efectos, el 27 de mayo de 2015 un panel hermano de este Tribunal dictó *Sentencia* mediante la cual revocó la *Sentencia Sumaria* dictada y devolvió el caso al Foro de Origen.[8] Posteriormente, el TPI volvió a dictar *Sentencia Sumaria* el 12 de abril de 2017, notificada por correo regular el 4 de mayo de ese mismo año, declarando *Ha Lugar* la *Demanda en Ejecución de Hipoteca* y una *Moción Solicitando Sentencia Sumaria* presentada por la parte recurrida.[9]

Dicha *Sentencia* del TPI fue objeto de revisión judicial nuevamente y el 29 de enero de 2018, el Tribunal de Apelaciones revocó la misma para que el TPI refiriera el caso al proceso de mediación compulsoria y se rindiera un Informe completo que abordara todos los renglones que requiere la Ley Núm. 184-2012 según enmendada, conocida como la "Ley de Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal", 32 LPRA secs. 2882, *et seq.*[10]

---

[4] Apéndice XI del Recurso de *Certiorari*, pág. 91-93
[5] Apéndice III del Recurso de *Certiorari*, Anejo A, págs. 15-24.
[6] Apéndice XII del Recurso de *Certiorari*, págs. 94-95.
[7] KLAN201500618.
[8] Apéndice XIII y XIV del Recurso de *Certiorari*, págs. 96-107.
[9] Apéndice XV del Recurso de *Certiorari*, págs. 108-114.
[10] Apéndice XVI del Recurso de *Certiorari*, págs. 115-120., KLAN201701071.

El caso fue referido al procedimiento de mediación compulsoria, por constituir el inmueble objeto de ejecución la vivienda principal de la parte peticionaria. Luego de varios trámites procesales, incluyendo la paralización del pleito provocado por la pandemia del COVID-19, el 11 de junio de 2022, la parte recurrida presentó una *Moción de Reapertura y Solicitud de Sentencia Sumaria*.[11] En dicha moción, la parte recurrida informó y reconoció ante el TPI que la parte peticionaria obtuvo una Orden de Descargo el 9 de enero de 2012 en el caso ante la Corte de Quiebras, caso núm. 10-01148 BKT.

El 3 de agosto de 2022, la parte peticionaria presentó una *Moción en Cumplimiento de Orden y en Oposición a Moción de Sentencia Sumaria*.[12] El 29 de agosto de 2022 y notificada el 15 de septiembre del mismo año, el TPI ordenó la reapertura del caso y concedió noventa (90) días para culminar cualquier descubrimiento de prueba que restara del caso.[13]

El 11 de marzo de 2024, se celebró una vista donde la parte peticionaria no compareció.  Surge de la *Minuta* de dicha vista que el TPI señaló una conferencia sobre el estado procesal para el 22 de mayo de 2024 a las 9:30 am.  A su vez, le concedió a la parte recurrida veinte (20) días para someter escrito sobre la reapertura del caso, la conclusión del descubrimiento de prueba y la resolución pendiente de la *Solicitud de Sentencia Sumaria*.[14] En cuanto a dicha vista, la parte peticionaria presentó *Moción sobre Disculpas por Incomparecencia a la Vista y Reconsideración de Sanción Económica*.[15]

---

[11] Apéndice XVII del Recurso de *Certiorari*, págs. 121-169.
[12] Apéndice XVIII del Recurso de *Certiorari*, págs.170-187.
[13] Apéndice XIX del Recurso de *Certiorari*, pág. 188.
[14] Apéndice XX del Recurso de *Certiorari*, págs. 189-190.
[15] Apéndice XXI del Recurso de *Certiorari*, pág. 191-192.

El 15 de abril de 2024 y notificada el 19 de abril del mismo año, el TPI dictó *Sentencia*.[16] En síntesis, se desprende de dicho pronunciamiento:

> [...] este Tribunal declara CON LUGAR [la] demanda y determina que [a] la parte demandada adeuda a la parte demandante la suma de $206,583.75 en principal, más los intereses al 5.950% anual desde el día 1 de noviembre de 2011, así como los intereses acumulados y por acumularse a partir de esa fecha y hasta total y completo repago de la deuda; cargos por demora equivalentes al 5.000% de todos aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha de vencimiento hasta el total y completo repago de la deuda; los créditos accesorios y adelantos hechos en virtud de la escritura de hipoteca; $23,106.00, para el pago de costas, gastos y honorarios de abogado como suma pactada a dichos efectos en el pagaré.
>
> **Ante la eventualidad de que la parte demandada no haga efectivo el pago de las sumas adeudadas a BPPR se ordenará al Señor Alguacil a efectuar la venta en pública subasta de la propiedad hipotecada y antes relacionada para aplicar el importe de la venta al saldo de la deuda**.[17] (Énfasis suplido).

Posteriormente, el 20 de mayo de 2024 la parte recurrida presentó *Moción Solicitando Ejecución de Sentencia*.[18] El 22 de mayo de 2024, la parte peticionaria presentó *Urgente Moción Solicitando Relevo de Sentencia por Nulidad por Violación a la Orden de Exoneración (Discharge) Federal Emitida en el Caso de Quiebra Número 10-01148 BKT*.[19] El 23 de mayo de 2024, la parte recurrida presentó *Oposición a Urgente Moción Solicitando Relevo de Sentencia*.[20] El 24 de mayo de 2024, la parte peticionaria presentó una *Réplica*.[21] El 28 de mayo de 2024 y notificada el 26 de junio del mismo año, el TPI emitió *Orden* en la cual declaró *No Ha Lugar* a la *Solicitud de Relevo de Sentencia*.

---

[16] Apéndice I del Recurso de *Certiorari*, págs. 1-12.
[17] Apéndice I del Recurso de *Certiorari*, pág. 11.
[18] Apéndice II del Recurso de *Certiorari*, págs. 13-14.
[19] Apéndice III del Recurso de *Certiorari*, págs. 15-25.
[20] Apéndice V del Recurso de *Certiorari*, págs. 49-51.
[21] Apéndice VI del Recurso de *Certiorari*, págs. 52-56.

Inconforme con el dictamen, la parte peticionaria presentó el 12 de julio de 2024 el auto de *Certiorari* ante nos, donde le imputa al foro primario la comisión del siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al dictar Orden denegando la urgente moción de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, ya que la referida sentencia es nula bajo la Sec. 524 de la Ley Federal de Quiebras, 11 USCA sec. 524 (a) (1).

Examinado el recurso en su totalidad y con la comparecencia de las partes, procedemos a establecer el derecho aplicable y resolver.

*-II-*

*-A-*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al*, 212 DPR 194, 207 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1., establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019). En lo pertinente, la Regla 52.1 de Procedimiento Civil, *supra*, dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en

casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

La discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Mun. Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *IG Builders et al. v. BBVAPR, supra*, pág. 338. Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros. *Id.* pág. 338. Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra*; *Rivera et al. v. Arcos Dorados et al. supra*; *Mun. Caguas v. JRO Construction, supra,* pág. 709; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339. La referida regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009). Es por ello que, los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado. *Id.* pág. 918. Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al.*, *supra*; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).

### -B-

Las adjudicaciones finales de un tribunal gozan de una presunción de validez y corrección, por lo que son recipientes de una acostumbrada deferencia. *SLG Rivera-Pérez v. SLG Díaz-Doe, et al,* 207 DPR 636, 657 (2021); *López García v. López García,* 200 DPR 50, 59 (2018). Ahora bien, *la Regla 49.2* de Procedimiento

Civil, 32 LPRA Ap. V, R. 49.2, es el vehículo procesal mediante el cual una parte adversamente afectada por una sentencia, solicita el relevo de esta. *Pérez Ríos y otros v. Luma Energy, LLC*, 2023 TSPR 136, 213 DPR ___ (2023); *SLG Rivera-Pérez v. SLG Díaz-Doe et al, supra,* pág. 656-657; *HRS ERASE vs. CMT*, 205 DPR 689, 698-699 (2020); *López García v. López García, supra.* El propósito de la precitada regla es proveer un justo balance entre dos intereses conflictivos de nuestro ordenamiento jurídico. *López García v. López García, supra*, pág. 60.

La regla en cuestión contempla seis (6) escenarios en los cuales el tribunal podrá relevar a una parte de los efectos de una sentencia dictada en su contra. Estos son:

(a) error, inadvertencia, sorpresa o negligencia excusable;
(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
(d) nulidad de la sentencia;
(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
Regla 49.2 de Procedimiento Civil, *supra.*

Además, la regla dispone un término fatal de seis (6) meses para la presentación del relevo de sentencia, al amparo de esta regla. *Bco. Santander P.R. v. Fajardo Farms Corp.,* 141 DPR 237, 243 (1996). Sin embargo, en cuanto a la controversia planteada, la misma regla aclara que:

Esta regla no limita el poder del tribunal para:

(1) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;
(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal. 32 LPRA Ap. V, R. 49.2.

Con relación a esta disposición en la regla precitada, nuestro más alto Foro explica que "[se] admite generalmente el ejercicio de la acción independiente en casos de sentencias nulas, ya que [é]stas son inexistentes". *Bco. Santander PR v. Fajardo Farms Corp, supra,* pág. 244, citando a *Figueroa v. Banco de San Juan,* 108 DPR 680, 689 (1979).

De la misma manera, en *García Colón et al. v. Sucn. González,* 178 DPR 527, 543-544 (2010) se clarificó que:

> [E]l inciso (4) de la Regla 49.2 de Procedimiento Civil, *supra,* otorga al Tribunal la facultad de relevar a una parte de los efectos de una sentencia cuando se determine su nulidad. **Una sentencia es nula cuando se ha dictado sin jurisdicción o cuando al dictarla *se ha quebrantado el debido proceso de ley.*** [...] Es importante destacar que según este fundamento no hay margen de discreción, como sí lo hay bajo los otros fundamentos de la Regla 49.2 de Procedimiento Civil, *supra*; si una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado. (Énfasis suplido).

Por otro lado, el Tribunal Supremo de Puerto Rico ha enfatizado sobre atacar una sentencia final y firme que:

> ***"[u]na vez que se archiva en autos la notificación y se registra la sentencia, ésta se considera** final. **A partir de ese momento los derechos y obligaciones de las partes quedan adjudicados y la sentencia goza de una presunción de corrección".*** (Énfasis nuestro); (Bastardillas en el original);(citas omitidas). Por consiguiente, "la sentencia se convierte en firme según el transcurso del tiempo. ***Es firme una vez transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho, o al concluir el proceso apelativo".*** (Énfasis suplido); (Bastardillas en el original); (citas omitidas). Es decir, una sentencia es final y definitiva ***"'cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia'.*** (Énfasis suplido); (Bastardillas en el original); (citas omitidas). Mientras, "[l]a adjudicación se presume válida y correcta hasta tanto sea reconsiderada, modificada o revocada mediante un remedio o recurso". (citas omitidas). *SLG Szendrey-Ramos v. Consejo de Titulares,* 184 DPR 133,156-157 (2011). (Énfasis suplido).

**-C-**

La Ley de Quiebras Federal, 11 USCA sec. 101 *et seq.*, (en adelante Código de Quiebras), es extensiva a Puerto Rico. "El propósito fundamental de todo procedimiento de quiebra es que el deudor tenga oportunidad de comenzar su vida económica nuevamente, mientras se protegen los intereses de los acreedores, distribuyendo entre éstos los activos del deudor de acuerdo con el Código de Quiebra". *Allende Pérez v. García*, 150 DPR 892, 897 (2000). Al presentar una petición de quiebra, se crea inmediatamente un *bankruptcy estate* o caudal en quiebra, el cual consiste de toda la propiedad que estará sujeta a la jurisdicción del Tribunal de Quiebras. Para poder determinar los bienes que compondrán el caudal referido, el deudor tiene la obligación de incluir junto a la petición de quiebra un listado actualizado de sus activos y pasivos, y de sus ingresos y gastos. 11 USCA sec. 362(a)–(b); *CMI Hospital v. Depto. Salud,* 171 DPR 313, 322 (2007).

Una vez se realiza la presentación de una petición ante el Tribunal de Quiebras, la sección 362(a) dispone una paralización automática de todo procedimiento o actuación contra una persona o entidad que presenta una solicitud de quiebra ante el tribunal con competencia. 11 USCA sec. 362(a). El Tribunal Supremo de Puerto Rico ha reiterado que:

> La paralización opera de forma automática en los pleitos, no importa la causa de la reclamación monetaria. Por lo tanto, los tribunales estatales quedan privados de jurisdicción automáticamente y no pueden continuar atendiendo los casos en los que exista una reclamación monetaria contra el deudor que presentó la petición de quiebra. *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 490–491 (2010); véase, además, *In re Jamo*, 283 F.3d 392, 398 (1er Cir. 2002).

Posterior a la paralización, y de acuerdo con capítulo de quiebras en que se haya radicado el proceso, ocurre el descargue o *discharge*. El descargue de una obligación del deudor es lo último del proceso de quiebras y ocurre al final de este. Esto significa que

la paralización automática cubre deudas que eventualmente pueden no ser descargadas. *Vera González v. ELA*, 199 DPR 995, 998 (2018).[22] Ahora bien, el Tribunal Federal de Quiebras es el único foro con jurisdicción para levantar la paralización automática y para decidir cuáles deudas serán descargadas. *Íd.* pág. 998. Por lo que necesariamente, la paralización estará vigente hasta tanto el caso presentado se culmine, se desestime o sea descargado, ya sean en los casos que sean al amparo del Capítulo 7,9,11, 12 y 13, respectivamente del Código de Quiebras, 11 USCA sec. 362(c)(2).

Una vez se emita el descargo de las deudas por el Tribunal Federal de Quiebras, debemos centrarnos en la Sección 524 del precitado estatuto. Veamos:

> (a) A discharge in a case under this title—
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
> (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived. 11 USCA sec. 524(a).

---

[22] Sentencia, Voto particular de conformidad emitido por el Juez Asociado Señor Martínez Torres, al cual se unieron la Juez Asociada Señora Pabón Charneco y los Jueces Asociados Señores Kolthoff Caraballo y Feliberti Cintrón.

Como podemos observar, la precitada Sección provee varios escenarios, en donde puede anularse una sentencia si es opuesta a la determinación emitida en el foro con jurisdicción. No obstante, esto no implica que se anulará de manera automática, sino se cumplen los requisitos previamente mencionados.

*-D-*

La acción de ejecución de hipoteca incluye la acción personal y la real, por ello se conoce como una de naturaleza mixta. *Abrams Rivera v. ELA*, 178 DPR 914, 928 (2010); *First Federal Savs v. Nazario, et als.,* 138 DPR 872, 879 (1995). En ese sentido, hay que saber distinguir entre el crédito (pagaré o promesa de pago) y la garantía que asegura el cumplimiento (hipoteca),  en posición de accesoriedad respecto al crédito. R.M. Roca Sastre, *Derecho Hipotecario,* Barcelona, 7ma edición, Ed. Bosch, 1979, T. IV, Parte 2, 1033. **La satisfacción de la sentencia se puede obtener mediante el requerimiento personal al deudor o por la ejecución de la garantía hipotecaria.** Es decir que, vista desde una perspectiva mixta, **permite al acreedor dirigirse contra el bien —independientemente del tercero que lo posea y contra el patrimonio** del deudor. A.C. Gómez Pérez, L.I. Quintana Lloréns, *La Hipoteca en el Derecho Inmobiliario Registral Puertorriqueño,* Ed. Temis S.A., Bogotá (2021), pág. 43. (Énfasis suplido).

**En su vertiente real, el acreedor hipotecario podrá dirigirla contra el bien inmueble dado en garantía**. *Íd.*, págs. 43-44. (Énfasis suplido).  Explica la tratadista que:

> [e]sta acción opera de naturaleza *in rem* y es independiente de quién sea el titular, ya pueda ser el propio hipotecante o un tercer poseedor. **Por lo que el titular del crédito, ante el incumplimiento de la obligación que asegura, puede solicitar la ejecución del bien o derecho que lo garantiza, aun si existiesen terceros que puedan verse perjudicados**. *Íd.*, págs. 43-44. (Énfasis suplido). Esa naturaleza *in*

*rem* es precisamente la que nace de la constitución de la garantía hipotecaria. *Íd.,* págs. 43-44.

**-III-**

La parte peticionaria plantea en su escrito, que incidió el foro primario al denegar la solicitud de *Relevo de Sentencia,* al amparo de la Regla 49.2 de Procedimiento Civil, *supra.* En esencia, sostuvo que dicha *Sentencia* es nula, esto al amparo de la sección 524 de la Ley Federal de Quiebras, *supra. No le asiste la razón.*

Específicamente, la parte peticionaria indica en su alegato:

La Sentencia en su parte dispositiva específicamente dispone que la parte demandada adeuda las sumas allí identificadas a la demandante. Y más aún, dispone que en la eventualidad de que la parte demandada no pague la deuda a BPPR, entonces el demandante podrá proseguir con la ejecución del inmueble. **Este lenguaje está adjudicando una causa de acción en cobro de dinero y autorizando al BPPR al cobro de una deuda que fue descargada. De hecho, con esta Sentencia, el BPPR podría fácilmente ejecutar la colateral y luego ir en contra de los demandados por deficiencia**.[23] (Énfasis suplido).

La interpretación realizada por la parte peticionaria es totalmente incompatible con el derecho antes expuesto, tanto sobre la Ley de Quiebras y el proceso de Ejecución *In Rem* que se ha desarrollado por la jurisprudencia interpretativa de nuestro Tribunal Supremo. Adviértase que en la *Sentencia* el Tribunal dispuso sobre las cantidades adeudadas. Si la parte peticionaria no las satisfacía, el BPPR puede llevar a cabo la ejecución *In rem* de la propiedad. Esto es totalmente cónsono con el procedimiento de ejecución de hipoteca. Esto pues, aun cuando hubo un descargo que elimina la responsabilidad personal del deudor con algunas deudas, el descargo no se aplica a deudas aseguradas o garantizadas como la del caso de marras.

Así las cosas, si la parte peticionaria no satisface las cuantías garantizadas en virtud de la escritura de hipoteca

---

[23] Recurso de *Certiorari,* pág. 22.

constituida por las partes, BPPR tiene el derecho de llevar a cabo la ejecución de esta, *In Rem.* En otras palabras, ante un escenario como el que nos ocupa, el acreedor hipotecario está legitimado a perseguir el pago de la deuda que se reclama por vía de la venta judicial del bien que asegura la hipoteca. Así pues, se posibilita que en casos en los que exista una orden de descargo, el pago se obtenga mediante el proceso de subasta pública, con el único caveat de que el banco no podrá ir contra los bienes personales del deudor si el dinero obtenido durante la subasta no es suficiente para cubrir la deuda en su totalidad. *No se cometió el error señalado.*

### -IV-

Por los fundamentos expuestos, los cuales se hace formar parte de esta *Sentencia*, dejamos sin efecto la paralización de los procedimientos, expedimos el auto de *Certiorari* y confirmamos la *Sentencia* recurrida.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones