Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| ARLEEN ALANIS CRUZ HIDALGO<br><br>Recurrida<br><br>v.<br><br>DON MACETA INC.; CHARLOTTE'S SWEETS AND FRAPPE, INC.; O LA HACIENDA DEL DON O DON FRAPPE & DON MACETA, 1320 PR, LLC Y OTROS<br><br>Peticionarios | KLCE202401341 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Núm.: MZ2022CV00157<br><br>Sobre:<br>Caída |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 10 de marzo de 2025.

Comparece ante nos Don Maceta Inc., Charlotte's Sweets and Frappe Inc., 1320PR, LLC y el señor Edwin Tirado Berríos (en conjunto, "los Peticionarios") mediante *Petición de Certiorari* recibida el 13 de diciembre de 2024. Nos solicita la revocación de la *Resolución y Orden* emitida y notificada el 10 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez ("foro primario" o "foro *a quo*"). Por virtud de ésta, el foro primario declaró *No Ha Lugar* la moción de relevo de sentencia instada por los Peticionarios.

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

### I.

El 7 de febrero de 2022, la señora Arleen Alanis Cruz Hidalgo ("señora Cruz Hidalgo" o "Recurrida") instó *Demanda* sobre daños y

perjuicios contra los Peticionarios.[1] En esta, alegó que el 16 de enero de 2021, visitó las facilidades propiedad de los Peticionarios junto a sus padres, Carmen Hidalgo Bonano y Moisés Cruz; su compañero Rafael López ("señor López) y su hermana Ashley Marie Cruz Hidalgo. Sostuvo la señora Cruz Hidalgo, que tanto ella como el señor López disfrutaron de la atracción conocida como *Somos de Aquí Racing Track.* Esbozó que mientras manejaba un *go-kart* en dicha atracción, condujo hacia un túnel el cual tenía un carril cerrado con un objeto que parecía una plancha de zinc. Sin embargo, destacó que no había un letrero de advertencia. Explicó que, al encontrarse con el carril cerrado, perdió el control del vehículo. Adujo además que el volante estaba duro, por lo que no pudo estabilizar el *go-kart* provocando que chocara con la vaya. Narró que detrás de ella se encontraba el señor López y que éste impactó el *go-kart* que conducía la Recurrida.

Conforme surge de las alegaciones de la *Demanda*, la señora Cruz Hidalgo sufrió lesiones, múltiples contusiones y laceraciones en diversas partes de su cuerpo incluyendo una perforación profunda en su muslo derecho ocasionado por un tornillo largo y profundo proveniente del *go-kart* que manejaba a consecuencia del impacto del *go-kart* con la valla y el impacto inevitable del *go-kart* que iba detrás de ella. La Recurrida indicó que su hermana, quien es enfermera, le solicitó al personal de las facilidades que le brindaran un botiquín de primeros auxilios, pero ninguno de los tres (3) botiquines que le entregaron tenía desinfectante. Asimismo, señaló que no empece los padres de la Recurrida solicitaron que se llamara al 911, los empleados indicaron que debían esperar a que el Gerente de Don Maceta se personara en el lugar. Arguyó que posteriormente fueron los bomberos quienes acudieron a la escena

---

[1] Véase, apéndice del recurso, págs. 8-11.

y le brindaron atención a la Recurrida. Esbozó que, tras ser atendida en un hospital, recibió varios puntos de sutura en el muslo derecho. Ante esto, la señora Cruz Hidalgo solicitó indemnización por los daños físicos, sufrimientos mentales y gastos médicos, los cuales valoró en quinientos mil dólares ($500,000.00).

Posteriormente, el 16 de febrero de 2022, los Peticionarios fueron emplazados.[2] Consta además en el expediente que el 22 de abril de 2022 el foro primario le anotó a los Peticionarios la rebeldía.[3] De igual forma, en lo pertinente, el foro primario emitió *Sentencia Parcial*[4] el 8 de junio de 2023, por virtud de la cual resolvió que los Peticionarios incurrieron en actuaciones negligentes las cuales fueron la causa próxima y adecuada que ocasionó los daños sufridos por la Recurrida.

Así las cosas, el 10 de abril de 2022, el foro a quo emitió Sentencia,[5] la cual fue notificada el 15 de abril del mismo año. En esta, formuló las determinaciones de hechos que se transcriben a continuación:

1. Que la demandante es mayor de edad, soltera, propietaria y vecina de Caguas, Puerto Rico, siendo su dirección postal: HC 05 Buzón 54780, Caguas, Puerto Rico 00725 dirección residencial en Bo. San Antonio, Carr. 175 Km. 2.8, Caguas, Puerto Rico 00725; teléfono: (787) 428-7329.

2. El codemandado, Don Maceta, Inc., es una Corporación con personalidad jurídica propia, debidamente autorizada a ejercer negocios por las Leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada, siendo su Agente Residente, Edwin Tirado Berríos con dirección física en Carr. #2, Km. 141.5, Quebrada Larga, Añasco, Puerto Rico 00610, y postal PO Box 808, Añasco, Puerto Rico 00610.

3. El codemandado, Charlotte´s Sweets and Frappe, Inc., o la Hacienda del Don o Don Frappe & Don Maceta, es una Corporación con personalidad jurídica propia, debidamente autorizada a ejercer negocios por las Leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada, siendo su Agente Residente, Edwin Tirado Berríos, con dirección física en Caracol Marginal Wendy, Carr. #2, Añasco, Puerto Rico y postal PO Box 2116, Añasco, Puerto Rico 00610.

---

[2] SUMAC, Entrada 4.
[3] SUMAC, Entrada 11.
[4] SUMAC, Entrada 23.
[5] Véase, apéndice del recurso, págs. 14-23.

4. El codemandado, 1320 PR, LLC., es una corporación de responsabilidad limitada, con personalidad jurídica propia, debidamente autorizada a ejercer negocios porlas Leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada, siendo su Agente Residente, Edwin Tirado Berríos, con dirección residencial, Carr. #2, Km. 141. 5, Añasco, Puerto Rico 00610 y postal, PO Box 808, Añasco, Puerto Rico 00610.

5. Por información y creencia, el codemandado, Somos de Aquí Race Track, es un DBA. Pertenecientes a los codemandados en este pleito.

6. Las codemandadas, Compañía A, Compañía B y Compañía C, son las aseguradoras contratadas por Don Maceta, Inc.; y/o Don Frappe, C.R.L.; y/o Charlotte´s Sweets and Frappe, Inc. y/o La Hacienda del Don y/o Don Frappe & Don Maceta; y/o 1320 PR, LLC; y/o Somos de Aquí Race Track, designadas con un nombre ficticio, por desconocerse el verdadero, las cuales mantienen pólizas de seguros a nombre de éstos y responde por todos los daños sufridos y reclamados por la demandante.

7. Que el Sr. Edwin Tirado Berríos está demandado en su carácter personal, junto a su esposa, Jane Doe y a la Sociedad Legal de Gananciales compuesta por ambos, siendo su dirección postal, Apartado 2116, Añasco, Puerto Rico 00610 y su número de teléfono (787) 229-1173.

8. El 16 de enero de 2021, la demandante, Arleen Alanis Cruz Hidalgo, visitó, en compañía de Carmen E. Hidalgo Bonano y Moisés Cruz, quienes son sus padres; Rafael López, quien es su compañero; y Ashley Marie Cruz Hidalgo, hermana de ésta, las facilidades de los demandados.

9. En dichas facilidades se encuentra la atracción, "Somos de Aquí Racing Track", la cual la demandante, Arleen Alanis Cruz Hidalgo, en compañía de Rafael López, se proponían disfrutar.

10. Mientras la demandante, Arleen Alanis Cruz Hidalgo, conducía su "go-kart" en la atracción "Somos de Aquí Racing Track", ésta condujo hacia el túnel, el cual tenía un carril cerrado con un objeto que parecía una plancha de zinc y, sin ningún tipo de letrero de advertencia, ésta pierde el control del "go-kart" sin poder estabilizarlo, debido a que el volante se encontraba muy duro, lo que provocó que impactara una valla, cayendo el casco de seguridad en la pista.

11. Rafael López, compañero de la demandante, Arleen Alanis Cruz Hidalgo, se encontraba conduciendo otro "go-kart" e iba detrás de la demandante, sin poder evitar impactar el "go-kart" que ésta conducía y del cual perdió el control impactando la valla.

12. Dado el impacto del "go-kart", la demandante, Arleen Alanis Cruz Hidalgo, sufrió múltiples contusiones y laceraciones en diversas partes del cuerpo, aparte de haber sufrido una perforación profunda en su muslo derecho por un tornillo largo y puntiagudo que se encuentra en un tubo del "go-kart" que separa las piernas del conductor.

13. Ashley Marie Cruz Hidalgo, hermana de la demandante, Arleen Alanis Cruz Hidalgo, quien es enfermera, solicitó al personal de las facilidades le brindaran un botiquín de primeros auxilios, habiéndole entregado tres (3) todos

carentes de desinfectante y equipo que pudiera ser utilizado para detener el sangrado de la perforación sufrida por la demandante, Arleen Alanis Cruz Hidalgo, por lo que Ashley Marie Cruz Hidalgo, tuvo que utilizar servilletas para tratar de detener la sangre.

14. Carmen E. Hidalgo Bonano, padres de la demandante, Arleen Alanis Cruz Hidalgo, solicitaron se llamara al 911; donde los empleados le indicaron que tenían que esperar que llegara el Gerente de Don Maceta. Posteriormente, fueron los bomberos quienes acudieron al lugar y le brindaron atención y fue llevada al Hospital San Carlos de Moca, donde recibió asistencia.

15. La demandante, Arleen Alanis Cruz Hidalgo, recibió asistencia médica debido a la perforación causada por el tornillo que se encuentra en un tubo del "go-kart" que está conducía.

16. La causa de este accidente obedeció a los actos negligentes de las facilidades de los codemandados, al no mantener en aptas condiciones el área, al exponer a los clientes a peligrosidad al utilizar un "go-kart" que contiene piezas que no cuentan con la seguridad que amerita.

17. Los demandados no colocaron rótulo alguno de advertencia para los clientes, ni tenían equipo médico esencial para primeros auxilios disponible para atender situaciones como la sufrida por la demandante, Arleen Alanis Cruz Hidalgo.

Conforme a la prueba admitida en la Vista de Daños, este Tribunal establece que los siguientes hechos quedaron probados:

18. El accidente objeto de esta Demanda ocurrió el 16 de enero de 2021, en las facilidades de la atracción con carros "go-karts", conocida como "Somos de Aquí Racing Track", que son operadas comercialmente por los codemandados en rebeldía, Don Maceta, Inc., Charlotte´s Sweets and Frappe, Inc., o La Hacienda del Don o Don Frappe & Don Maceta, 1320 LLC,PR y su propietario, el Sr. Edwin Tirado Berríos.

19. El referido accidente y los daños sufridos por la demandante, Arleen Alanis Cruz Hidalgo, se deben única y exclusivamente a la negligencia de los demandados, al mantener en la pista para correr los vehículos "go-kart" objetos, como la plancha de zinc identificada por la demandante, que se interpuso en el recorrido y ante la dificultad de controlar el vehículo, recibe el impacto de otro "go-kart" y se incrustró en su muslo derecho un tornillo largo y puntiagudo que sobresalía en el "go-kart" asignado por la parte demandada.

20. La demandante, Arleen Alanis Cruz Hidalgo, sufrió una herida abierta en consecuencia a la perforación, con sangrado profuso en su muslo derecho. Además, de traumas en otras partes del cuerpo como la rodilla y mano derecha.

21. Para la fecha del accidente, el establecimiento comercial demandado no contaba con el equipo mínimo requerido para ofrecer primeros auxilios, en caso de una emergencia médica o accidental en sus facilidades.

22. Debido a lo anterior, la demandante no recibió las atenciones ni ayuda mínima por parte de los demandados durante el accidente. Ello de por sí, constituye una omisión negligente de la parte demandada.

23. Los demandados fallaron crasamente en el manejo de esta emergencia, ya que fueron los padres de la demandante y su hermana, Ashley Marie Cruz Hidalgo, quienes le brindaron la primera ayuda, ya que Ashley Marie es enfermera de profesión y su madre, Doña Esther Hidalgo, contactó el Servicio de Emergencia al 911.

24. De la prueba se corrobora que al lugar del accidente acudió el personal asignado por el Cuerpo de Emergencias Médicas, quienes documentaron el incidente bajo el Número PR011621271 R2.

25. La demandante, Arleen Alanis Cruz Hidalgo, verbalizó a dicho personal sus quejas principales como resultado del accidente y el personal de emergencias interpretó que ésta exhibía una herida con avulsión de tejido en la patela proximal del fémur distal en la extremidad inferior derecha. Revisados los signos vitales, se le colocó un vendaje y la demandante fue conducida directamente al Hospital San Carlos en Moca.

26. Del expediente médico de la evaluación por el personal de la Sala de Emergencias del Hospital San Carlos, surgen las evaluaciones, laboratorios, radiografías y las notas del personal médico y de enfermería.

27. La demandante sufrió traumas y herida en su extremidad inferior derecha, en la rodilla y el muslo, además, en su mano derecha.

28. A la parte demandante, se le prescribieron medicamentos, entre otros a consecuencia del intenso dolor y molestias provocadas por las heridas y traumas sufridos.

29. La parte demandante tomó las medidas de seguridad para la conducción del vehículo "go-kart" y no contribuyó, en forma alguna, a la ocurrencia del accidente sufrido en la atracción "Somos de Aquí Racing Track" que operan los demandados, ni contribuyó a sus daños. Por el contrario, fue diligente al procurar asistencia médica de emergencia para evitar sufrir complicaciones o un daño mayor.

30. La parte demandada fue sumamente negligente al no brindar el mantenimiento mínimo a sus vehículos "go-karts", conociendo o debiendo conocer de la existencia de una condición peligrosa, como el tornillo expuesto y por ello provocar directamente que la demandante se accidentara y sufriera una herida abierta y demás traumas, que ameritaron puntos de sutura.

31. En la actualidad, la parte demandante, Arleen Alanis Cruz Hidalgo, exhibe una cicatriz en el área del muslo o fémur derecho, resultado de este accidente, la cual este Tribunal pudo apreciar visualmente el día de la Vista.

32. Las fotografías admitidas en evidencia, coetáneas al accidente, demuestran con precisión la magnitud de las heridas, los puntos de sutura y las condiciones en que se encontraba la demandante, Arleen Alanis Cruz Hidalgo, para la fecha del accidente. También, se perciben las condiciones del área y del vehículo "go-kart" asignado a la demandante por los demandados.

33. La parte demandada no ha compensado en forma alguna a la demandante, Arleen Alanis Cruz Hidalgo, los daños por los cuales debe responder.

34. Es de conocimiento de la parte demandante que los demandados continúan operando comercialmente el establecimiento de entretenimiento y la atracción de

carros "go-karts," conocida como "Somos de Aquí Racing Track."

35. La parte codemandada en rebeldía ha obrado de forma temeraria y contumaz.[6]

Cónsono con las determinaciones de hechos realizadas, el foro primario declaró *Ha Lugar* la *Demanda* sobre daños y perjuicio y, en consecuencia, condenó a los peticionarios al pago de cuarenta mil dólares ($40,000.00) por los daños a la Recurrida, el pago de cinco mil dólares (5,000.00) en concepto de costas y gastos, más honorarios de abogados.

Inconforme, el 8 de agosto de 2024, comparecieron los Peticionarios mediante *Urgente Moción Solicitando Relevo de Sentencia.*[7] En esencia, argumentaron que el foro primario actuó sin jurisdicción toda vez que uno de los codemandados en el pleito, 1320PR, LLC, se había acogido a la protección de la Ley Federal de Quiebras. En ese sentido, especificó que el 21 de agosto de 2021, esta parte había radicado la Petición 21-02538-7 y que en dicho recurso se incluyó la reclamación de epígrafe. Por estos fundamentos solicitó el relevo de la sentencia, ya que alega que aplica una paralización automática de cualquier proceso judicial por virtud de la Ley Federal de Quiebras, la cual continua vigente.

Evaluado su escrito, el 10 de octubre de 2024, el foro *a quo* dictó y notificó *Resolución y Orden.*[8] Mediante esta, el foro primario expresó que, tras examinar los documentos anejados en la moción de relevo de sentencia, no había constancia de que la reclamación de epígrafe fuera incluida en el pleito de quiebras. De la misma forma, concluyó que aun de ser aplicable la paralización automática por virtud de la Ley Federal de Quiebras, la misma aplicaría únicamente a la parte que la solicitó, entiéndase, 1320PR, LLC y no sería extensiva al resto de los codemandados. A su vez, el foro *a quo*

---

[6] *Íd.,* págs. 15-19.
[7] *Íd.,* págs. 24-26.
[8] *Íd.,* págs. 27-29.

ordenó a 1320, LLC a que mostrara evidencia de que la Recurrida fue incluida como acreedora en el caso de quiebras.

Insatisfecho, 21 de octubre de 2024, los Peticionarios presentaron *Urgente Moción Informativa, en Cumplimiento de orden y Solicitud de Reconsideración.*[9] En esta, mantuvo su posición en que la *Sentencia* debía declararse nula *ab initio* por virtud de la paralización automática a favor de 1320PR, LLC y que el efecto de dicha nulidad debía extenderse a todas las partes involucradas. Por su parte, el 11 de noviembre de 2024, la Recurrida presentó *Oposición a "Urgente Moción Informativa, en Cumplimiento de orden y Solicitud de Reconsideración.*[10] En esencia, subrayó que la paralización no aplicaba de manera automática en cuanto a todas las partes involucradas en el pleito. Examinado ambos escritos, el 12 de noviembre de 2024, el foro primario emitió y notificó *Resolución* en la que declaró *No Ha Lugar* la reconsideración.[11]

Inconforme aun, el 12 de diciembre de 2024, los Peticionarios comparecieron ante esta Curia mediante el recurso de epígrafe y formularon los siguientes señalamientos de error:

> Erró el Honorable Tribunal de Primera Instancia al concluir que la paralización automática de las gestiones de cobro, judiciales o extrajudiciales, no aplicaba a todo el pleito, sino únicamente al codemandado acogido a la protección de la Ley de Quiebras, a pesar de que la adjudicación de este resultaba en el menoscabo patrimonial de dicho deudor protegido

> Erró el Honorable Tribunal de Primera Instancia al denegar el relevo de la sentencia por adolecer esta de nulidad, al carecer de jurisdicción por existir una orden de paralización automática de cualquier gestión de cobro contra 1320PR, LLC

El 9 de enero de 2025 emitimos *Resolución* en la cual desestimamos el recurso de epígrafe. Oportunamente, el 27 de enero de 2025, los peticionarios presentaron *Solicitud de Reconsideración*

---

[9] *Íd.,* págs. 30-40.
[10] *Íd.,* págs. 41-42.
[11] *Íd.,* págs. 43.

a la cual esta Curia declaró *Ha Lugar* mediante *Resolución* el 28 de enero de 2025 y en consecuencia se dejó sin efecto nuestra *Resolución* emitida el 9 de enero de 2025. Así las cosas, el 3 de febrero de 2025, emitimos *Resolución* en la cual le concedimos a la parte Recurrida un término de diez (10) días para que presentara posición al recurso. Sin embargo, el 13 de febrero de 2025, la representación legal de la Recurrida, Lcdo. Lutgardo Acevedo López, compareció mediante *Moción Informativa sobre Relevo de Representación.* En esta, informó que el 18 de diciembre de 2024, el foro primario le aceptó la renuncia de la representación legal en el caso de marras a nivel de foro primario. Por tanto, el 21 de febrero de 2025, emitimos *Resolución*, en la cual le concedimos un término improrrogable de cinco (5) días a la Recurrida, para que notificara su nueva representación legal. Vencido el término, la parte Recurrida no compareció ante esta Curia, por lo cual, procederemos a resolver sin el beneficio de su comparecencia.

## II.

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Torres González v. Zaragoza Meléndez, supra*; *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra*, págs. 712.

Por otro lado, tanto la Regla 52.2 (b) de Procedimiento Civil, 32 LPRA Ap. V, R. 52.2 (b), al igual que la Regla 32 (D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, establecen que los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia deben ser presentados dentro del término de treinta (30) días, contados desde la fecha del archivo en autos de copia de la

notificación de la resolución u orden recurrida. Este término es de cumplimiento estricto.

De otra parte, el recurso de *certiorari* está reglamentado por la Parte IV del Reglamento del Tribunal de Apelaciones, *supra*. Conforme a la Regla 33(B) contenida en esta parte:

> La parte peticionaria notificará la solicitud de *certiorari*, debidamente sellada con la fecha y hora de presentación, a los abogados o abogadas de récord, o en su defecto a las partes . . . dentro del término dispuesto para la presentación del recurso. Este término será de cumplimiento estricto. 4 LPRA Ap. XXII-B, R. 33(B).

La referida Regla también dispone la forma en que se efectuará la notificación. Por otro lado, la Regla 34 dispone los requisitos que debe cumplir una petición de *certiorari*, entre los cuales se encuentra el señalamiento de errores y la discusión del derecho aplicable a los hechos. También expone los requisitos que debe cumplir el apéndice del recurso y hace referencia a las reglas de los índices. 4 LPRA Ap. XXII-B, R. 34.

### B. Relevo de Sentencia

En nuestro ordenamiento las sentencias dictadas por un tribunal advienen finales y firmes una vez transcurren treinta (30) días desde que son registradas y notificadas a las partes. Por tal razón, si una parte desea la revisión de un dictamen emitido por el Tribunal de Apelaciones cuenta con un término de treinta (30) días desde que se archiva en autos copia de la notificación de la sentencia o resolución. Véase, Regla 52.2 de Procedimiento Civil, *supra*. Transcurrido este periodo jurisdiccional la misma no podrá ser apelada. *Íd*. Para atacar la validez de una sentencia final y firme, las partes tienen a su disposición el mecanismo de relevo de sentencia.

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R.49.2, dispone que una parte puede solicitar que el tribunal la releve de los efectos de una sentencia, cuando ocurra alguna de las siguientes circunstancias excepcionales:

(a) error, inadvertencia, sorpresa o negligencia excusable;

(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Este mecanismo post sentencia, tiene el propósito de proveer un justo balance entre dos intereses conflictivos de nuestro ordenamiento jurídico. "Por un lado, se encuentra el principio de que todo caso se resuelva justamente, mientras que por otro lado se encuentra el interés de que los litigios concluyan." *HRS Erase v. CMT*, 205 DPR 689 (2020), citando a *García Colón et al. v. Sucn. González*, 178 DPR 527, 540 (2010). Por ello, el Tribunal Supremo ha reiterado que la Regla 49.2 de Procedimiento Civil*, supra,* debe "interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia". *HRS Erase v. CMT*, *supra*, citando *Díaz v. Tribunal Superior*, 93 DPR 79, 87 (1966).

Ahora bien, es menester señalar que los tribunales tienen la discreción de sopesar estos factores y determinar si procede relevar a una parte de los efectos de una sentencia. *Íd*, citando a *Náter v. Ramos,* 162 DPR 616, 624 (2004). Por ello, es importante considerar que "[l]as disposiciones de esta regla no serán aplicables a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en los incisos (c) o (d)". Regla 49.2 de Procedimiento Civil, *supra*. El promovente de la solicitud de relevo de sentencia deberá presentarla "dentro de un término razonable, pero en ningún caso

después de transcurridos seis (6) meses de haberse registrado la sentencia". *Íd.* No obstante, tales normas ceden cuando se trata de una sentencia que adolece de nulidad o cuando la sentencia ha sido satisfecha. *HRS Erase v. CMT, supra,* citando *Rivera v. Algarín,* 159 DPR 482, 490 (2003). Tal es así que, nuestro Máximo Foro ha establecido que "[l]a obligación de relevar a una parte de los efectos de una sentencia nula es tan inescapable que, incluso, cuando la regla establece que la moción se presentará en un término razonable que no exceda de seis meses de haberse registrado la sentencia, este término es inoperante ante una sentencia nula". *Pérez Ríos et al. v. CPE,* 213 DPR___ 215 (2023), 2023 TSPR 136, pág. 12.

La consabida regla no constituye una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración. Es decir, el precepto no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación. *García Colón et al. v. Sucn. González,* supra, pág. 541.

De otro lado, si una parte solicita el relevo de sentencia al amparado en el inciso (4) de la Regla 49.2 de Procedimiento Civil, *supra,* y demuestra que la sentencia es nula, el foro primario no tendrá discreción para denegar la misma. "[S]i una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado". *HRS Erase v. CMT, supra,* citando a *García Colón et al. v. Sucn. González, supra,* págs. 543-544. "[C]uando una sentencia es nula, se tiene por inexistente, por lo que no surte efecto alguno". *López García v. López García,* 200 DPR 50, 62 (2018). "[A]nte la certeza de nulidad de una sentencia, resulta mandatorio declarar su inexistencia jurídica; ello independientemente del hecho de que la solicitud a tales efectos se haga con posterioridad a haber expirado el plazo de seis (6) meses". *HRS Erase v. CMT, supra,* citando a *Montañez v. Policía de P.R.,* 150

DPR 917 (2000). Así, que la parte promovente no está limitada por el término de seis (6) meses dispuestos en la Regla 49.2 de Procedimiento Civil.

Sobre ello, nuestro máximo foro ha expresado lo siguiente:

> El esquema amplio y abarcador de remedios que provee la Regla 49.2 reduce considerablemente el ejercicio de esta acción independiente a los casos en que ha transcurrido el término fatal de seis meses y las circunstancias sean de tal índole que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia contra una parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos. *Figueroa v. Banco de San Juan*, 108 DPR 680, 689 (1979).

De igual modo, se considera que una sentencia es nula cuando el tribunal actuó sin jurisdicción o cuando se quebrantó el debido proceso de ley de alguna de las partes. *HRS Erase v. CMT*, *supra*, citando a *García Colón et al. v. Sucn. González, supra*, pág. 543. Cuando se alega que la nulidad de la sentencia por alguna violación al debido proceso de ley, el profesor Rafael Hernández Colón señaló que el "[q]uebrantamiento del debido proceso de ley es un concepto mucho más amplio y pueden haber tantas manifestaciones del mismo como principios del debido proceso existen y que se hayan quebrantado en un caso en especial". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 5ta ed., San Juan, Ed. Lexis Nexis, 2010, sec. 4807, pág. 408. Así que, se ha resuelto que la ausencia de una parte indispensable es una violación al debido proceso de ley que conlleva obligatoriamente el relevo de la sentencia. *HRS Erase v. CMT*, *supra*, citando a *García Colón et al. v. Sucn. González, supra*, pág. 551.

**III.**

En el presente recurso, los Peticionarios alegan que incidió el foro primario al denegar la concesión del relevo de sentencia. En específico, arguye que erró el foro *a quo* al no relevar a los Peticionarios de la *Sentencia* emitida el 10 de abril de 2024, pese a 1320PR, LLC instó una petición de quiebra en el tribunal federal.

Por lo anterior, solicita nuestra intervención para que revoquemos la determinación del foro primario, la cual denegó su solicitud de relevo de sentencia.

Adviértase que en el presente recurso se recurre de una *Resolución* emitida en etapa post sentencia. Esta clase de determinaciones no está comprendida en la Regla 52.1 de Procedimiento Civil, *supra*. En vista de ello, nos corresponde examinar si debemos ejercer nuestra facultad revisora de conformidad a la Regla 40 del Tribunal de Apelaciones, *supra*.

Tras evaluar detenidamente el presente caso, determinamos que no se han producido las circunstancias que exijan la intervención de este Tribunal. En particular, no encontramos los elementos requeridos en la Regla 40 del Tribunal de Apelaciones, *supra*, para dictaminar que el foro primario actuó de forma arbitraria, incurrió en craso abuso de discreción o en aplicación errónea de la ley. A la luz del marco legal reseñado, no identificamos los criterios que nos motiven a expedir el auto de *certiorari*.

**IV.**

Por los fundamentos antes expresados, **denegamos** la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones